Spalding, J.
The evidence in this case shows very conclusively that when the town of Williamsburg!) was laid out by Gen. Lytle in 1796 or 1797, the ground in controversy, consisting of about 5£ acres, lying in an oblong shape, was left entire and undivided, near the centre of the town, and surrounded on all sides by streets and village lots. The plat of the town was undoubtedly made out at the time, as many ancient deeds, brought forward as exhibits in the cause, refer to it in direct terms; but as there was then no law in existence requir ing town plats to be recorded, it is lost sight of, in the evidence, for many years. _ .
Perhaps the first authentic information in regard to said orig *23 inal plat, is to be derived from the deposition of Gen. Richard Collins, who testifies that in the years 1813 and 1814 he was clerk to David C. Bryan, the recorder of Clermont county, and was himself then familiar with the records of said county — that his attention was called, in 1814, particularly to a plat of the town of Williamsburgh, found in one of the first books of records of deeds. This plat, he says, rvas on a separate sheet of paper, and only fastened into the book. It was then generally recognized as the true plat of the town. He says further, that he has recently seen the same plat, as he believes, in the office of the recorder, and it .presents the same general appearance as when he saw it in 1814.
With the exhibits in the ease, we find a copy of a pla.t of Williamsburgh, certified by the recorder to be “a copy of a plat in deed book C, as found between the 1st and 2d pages of said book, stitched in said book.” This is in all probability the first plat of the town, as it unquestionably is the one examined by Gen. Collins in the year 1814. It has the lots all numbered, the streets and alleys fairly displayed, and the words “ Public Square ” written upon the space representing the oblong piece of ground. It- will be borne in mind that this plat, if it be the original plat of Williamsburgh, was made in 1798 or 1797.
The first law on the subject of town plats was enacted by the territorial legislature, Dec. 6,1800, and took effect on the first day of May, 1801.
By the first section of said act, the original proprietors of such towns as had been before laid out within the territory, were required, within 'one year from the day when the act should take effect, to cause a true map or plat of such town to be recorded in the recorder’s office of the county, under a penalty of one thousand dollars ; but no acknowledgment or even signature on the part of the proprietor was requisite. The same act provided that plats of towns, thereafter to be laid out, should be signed and acknowledged by the proprietor, before being admitted to record. The latter provision was substantially re-enacted by the state legislature in 1805, and remained *24 in force until after the plat of 1815 was put on record. The provision first above cited, was dropped from the act of 1805.
It will be seen hereafter that Gen. Lytle, in a note appended to the plat of 1815, distinctly admitted that “ the plat of the town had been before recorded, in due season, agreeably to law.”
It is fair to presume then, that, after the act of 1800 took effect, and within the time that would save him from the penalty, Gen. Lytle placed in the recorder’s office of Clermont county the original plat of his town, or a copy thereof, for record. This plat was sewed into the record book, in conformity with a practice which obtained in many parts of the State in its first settlement, and has thus been preserved to this day.
If this be a just conclusion of fact, the law of the case is settled by repeated decisions of this court: 6 Ohio Rep. 298; 7 Ibid. 217, and 9 Ibid. 80.
The land in controversy was dedicated to the use of the inhabitants of Williamsburgh and for a “ public square,” when the town was first surveyed and platted. The use vested at the instant the first lot, designated upon the plat, found a purchaser. Whether the fee passed from Lytle or not is immaterial. If it remains vested in Lytle’s heirs or assigns, they will be decreed fo hold it for the benefit of the town of Williams-burgh, to be used for a “ public square,” according to the original intention and dedication of the proprietor.
At the time when this land was thus dedicated to the public use, Clermont county had no existence, and therefore the claim that Gen. Lytle originally designed it as a site for county edifices so long as Williamsburgh should remain the county seat, has no foundation in fact. It is true, that some four years after this town was laid out by Lytle, with the public square marked distinctly upon the plat, Williamsburgh was made the seat of justice of the new county of Clermont. Up to this time, it is not reasonable to suppose, that any strongly marked evidence of user by the people of the town would be found.
*25 It is in evidence, however, by the oath of A. McLain, that as early as 1799, before the county of Clermont was established, this ground was called the public square. There is some other testimony tending to show that the first inhabitants of Williamsburgh regarded this tract so much in the light of public property, that they were accustomed to enter and cut fire wood upon the premises at their own convenience. I know not what other evidence of user we should look for in a wilderness town. Surely the people were not required, thus early, to fence in order to preserve their public square. As well might we look for graveled walks and artificial fountains as the evidence of user.
In 1801, a log jail was erected on this public square for the use of the county, and from this time until the removal of the seat of justice in 1825 or ’26, the ground was used mainly for county purposes. It is insisted by defendant’s counsel that this use-of the ground by the county, was adverse to the claims of complainants, and that they are barred by the law of limitations. I cannot so regard it. There seems to be nothing inconsistent in the respective claims of town and county. The people of the town require that the 5¿ acres of ground shall not be subjected to the control of any individual as private property. They are content, however, that the county shall have an easement therein; the right to keep a court-house and jail upon the premises so long as their town shall enjoy the immunities of a county seat. . In the Town of Lebanon v. Commissioners of Warren County, 9 Ohio Rep. 80, this court expressly decided that “ the actual occupation, of the lots by a court-house and jail is not inconsistent with the use of the property in the town; for the location of a court-house and jail on a public square, transfers no property, but is an easement only, and the town may reclaim its rights when the county occupation shall cease.”
■ But it is insisted that the original proprietor made, acknowledged, and caused to be recorded, a true plat of his town of *26 Williamsburgh, in pursuance of the statute then in force, on the 16th day of November, 1815.
It is true that a plat of this date was put on record by Gen. Lytle, and if we pay heed to the testimony, we need not mistake his object. The seat of justice had been maintained at Williamsburgh for fifteen years. Gen. Lytle had been enabled thereby to dispose of many of his town lots, but many more remained unsold. Substantial county buildings had been erected on the public square. Efforts were already being made to procure a removal of the county seat. What more natural than that Gen. Lytle should endeavor to interpose, as an obstacle in the way of such removal, the notion that, in such an event, the public square, with the buildings thereon, would revert to him ? But so far from militating against the rights of the town, the record of this last plat has furnished evidence which renders them secure.
It purports to give the lots,, streets, alleys and “ public grounds” in Williamsburgh. So far as it goes, it compares exactly with the old plat found stitched into book C, with this only exception, that the ground in controversy is marked therein “ public ground,” instead of “ public square,” as in the old map. The number of lots is considerably reduced, and this is accounted for in the evidence, that some time after the town was laid out, many of the lots were vacated by the proprietor.
In his certificate attached to this plat, Gen. Lytle says, “ the square marked ‘ public ground ’ is reserved for county purposes ; that is, for the erection of public edifices thereon for the use of the county, and such other improvements of taste and utility as the legal authorities of said county shall deem expedient to the use of said county for the purposes aforesaid. Provided, nevertheless, that if the seat of justice should at any time hereafter be removed from said town, and that it should not continue and remain established as the county seat of said county of Clermont, then, and in that case only, the said square or public ground, so reserved for the purposes above described, shall be considered as actually vacated by the county, and shall *27 revert, with its appurtenances, to me as original proprietor, and as though no such grant had ever been made.”
To this certificate Gen. Lytle has appended the following:
“ N. B. It may be necessary to add by way of further explanation, that the plat of this town has been before recorded in due season, agreeable to law, but it having been suggested by some meddling person that the first record was vague and unsatisfactory, the above is now placed on record to remove all doubt or ambiguity.”
Here we find the important; admission, made by Gen. Lytle, that the plat of this town had been before recorded in due season, agreeable to law. If in due season and agreeable to law, it must have been done after the act of 1800 took effect, and within twelve months thereafter, to wit, anterior to the month of May, 1802. It is not pretended that the records of Clermont county show any plat of Williamsburgh anterior to the plat of 1815, save only the plat stitched in book C, and first seen in the years 18111,1814, by Gen. Richard Collins.
If 'this ground was dedicated by the proprietor in 1796, to the use of the town, then it follows that no subsequent act of his can control that use, and the limitations and reservations in the plat of 1815 are of no force whatever. In the Town of Lebanon v. Commissioners of Warren County, already cited, the court held that the dedicating act was the registry of the town plat in 1803. The use -was limited, and took effect then; and that a subsequent conveyance of the donors affected neither the trust nor the title.
Recognizing as we do the soundness of the decision made in Le Clercq et al. v. The Town of Gallipolis, 7 Ohio Rep. 217, we have no hesitation in saying that the complainants, owning lots in the town of Williamsburgh adjoining the alleged public square, may sustain their bill in chancery to establish the dedication and preserve the public use. The defendants are not warranted by the facts in setting up a want of notice, and we know of no rule which will justify us in charging upon the public square the consideration money which they paid or the ex *28 pense which they have incurred in making improvements thereon.
The complainants will take a decree declaring the use in the town of Williamsburgh, and the injunction is made perpetual