EMMA D. GWALTNEY v. MISSOURI COMMISSION FOR THE BLIND, Appellant.—14 S. W. (2d) 988.

Division Two, March 2, 1929.

*E. E. Penzel* and *Raymond J. Lahey* for appellant.

*Munger & Munger* for respondent.

WHITE, J.—The plaintiff presented her application to the defendant Commission July 10, 1923, claiming that she was entitled to a pension as a blind person from and after that date. On July 11, 1923, her application was rejected and she filed her affidavit for appeal to the Circuit Court of Stoddard County. On a hearing in the circuit court, October 2, 1925, evidence was heard and the court found that the applicant was entitled to receive a pension as a blind person, according to the pension laws of Missouri for 1923, and ordered that her name be placed upon the pension roll for a pension

46

of twenty-five dollars per month. From that judgment the Commission appealed to this court on the ground that the decision of the circuit court was against the evidence and against the law.

I. The respondent, without moving to dismiss the appeal, claim. there is no right of appeal to this court of cases coming under the Blind Pension Act.

Section 9 of that act (Laws 1923, p. 306) provides that any person claiming the benefits of this act, aggrieved by the acts of the Commission, may appeal from its decision to the circuit court. That is what the petitioner in this case did. We held in the case of Shelley v. Missouri Commission for the Blind, 309 Mo. 1. c. 624, that while the word "appeal" was used in that section, the proceeding was in no sense an appeal, because there were no parties to the case, but the effect of the statute was to allow the circuit court to review the action of the Commission upon the application of the petitioner. When the case got into the circuit court in that way it was a case pending, with parties, the petitioner Gwaltney v. The Missouri Commission for the Blind. It stood like any other case.

Under Section 1469, any party to a suit aggrieved by a judgment of any circuit court on any civil cause from which an appeal is not prohibited by the Constitution may take an appeal to the appellate court having jurisdiction. As we held in the Shelley case, the Commission being a State body, an appeal in such case lay to the Supreme Court. We have been cited to no statute or other authority which would classify this case as any different from any other case allowing appeals.

II. The bill of exceptions sets out the evidence in full. The trial court in its judgment recites that petitioner had no vision greater  than what is known as light perception, as defined by the Springfield Court of Appeals in Dahlin v. Commission, 262 S. W. 424. The circuit court overlooked the ruling of this court in Shelley v. Commission for the Blind, 309 Mo. 595, in which the opinion in the Dahlin case was overruled. In the Shelley case we defined what was meant by light perception as established by a volume of expert evidence.

III. Since the only error assigned is that the judgment is against the evidence, we are obliged to consider whether there is sufficient evidence to support the finding of the trial court.

The only facts Mrs. Gwaltney testified to as throwing light upon the subject, are as follows:

"Q. Now, then, I will ask you if you can discern light; if you can tell the difference between light and darkness? A. Why, yes sir, I can."

And:

"They have called me blind for four years past, to do any work."

She further testified, and her witnesses testified, that she assisted with the housework; she could wash dishes and the like. One witness testified that she was what she called "practically blind."

The Commission introduced in evidence Dr. Spalding who testified that he placed a chart in front of her and asked her if she could see the largest letters within about a foot of her face, and that evidently she could see the large letters at the top. It was what he called a 1-200th vision. He was asked this question:

"Q. Was she able to tell what letter it was? A. Yes sir."

Also there was evidence offered as to the possibility of improving her eyes by an operation. Her application was introduced without objection, in which these questions were asked and answered:

"VISION.

"1. Is the applicant totally blind and absolutely unable to distinguish between ordinary daylight and darkness?

In the right eye, No. In left eye, No."

(For determining the answers to the following questions regarding the vision, place applicant near a well-lighted window with back to the light.)

"2. If not, can the applicant see:

(a) The direction of motion of a hand at one foot? With right eye, Yes. With left eye, Yes.

(b) Can the applicant count fingers at one foot? With right eye, Yes. With left eye, Yes.

(c) Can the applicant recognize any letters? If so, give size of letter read or designation of letter from Snellen Test Types, also giving the greatest distance at which such letter can be made out.

With right eye, 1-200.

With left eye, 1-200."

The Act of 1923 provides that no person shall be entitled to a pension under the act "who has a vision, with or without proper adjusted glasses, greater than what is known as 'light perception;' and no person shall be entitled to receive a pension except upon scientific vision-test supported by the certificate of a competent oculist."

The only scientific vision test here showed that she possessed greater vision than light perception. She could perceive large letters on a chart; she was not unable to distinguish between ordinary daylight and darkness; with either eye she could see the direction of motion of hand or foot; could count fingers at one foot distant from the eye. All this, under the ruling in the Shelley case showed she possessed vision greater than light perception.

The judgment of the circuit court is accordingly reversed. All concur.