Jean CUNNINGHAM, William Turner, and Taylor Glenn (Applicants), Respondents,

v.

F. R. LEIMKUEHLER, Chairman, John V. Boland, F. C. Woermann, Frank E. Lawrence, W. A. Beffa, All Constituting the Board of Adjustment of the City of St. Louis, Missouri (Respondents), Appellants.

No. 29021.

St. Louis Court of Appeals.

Missouri.

March 15, 1955.

Motion for Rehearing or for Transfer to Supreme Court Denied April 15, 1955.

Robert L. Brown, John B. Sharpe, St. Louis, for appellants.

Alphonse J. Lynch, Curtis C. Crawford, St. Louis, for respondents.

WOLFE, Commissioner.

This is an appeal from a judgment of the circuit court which reviewed, on certiorari, an order of the Board of Adjustment of the City of St. Louis. The court reversed the decision of the board and set aside its order granting a permit to Jefferson McClendon to occupy as a funeral parlor premises known as 4335 Washington Avenue in St. Louis. The Board of Adjustment prosecutes this appeal.

The property in question had been occupied by a Mr. Fred Williams since 1930 and he had a lighted sign approximately 6 feet long and about 18 inches wide over the front entrance of the building at the address mentioned, and the sign read "Fred M. Williams, Funeral Director".

In 1953 Jefferson and Clara McClendon purchased the property from Fred Williams for the purpose of operating a funeral parlor there. McClendon applied to the building commissioner for a permit to occupy the building for the purpose mentioned. Prior to 1950 this city block had been zoned as commercial but in 1950 a new zoning ordinance was adopted which placed it within an area zoned for four-family dwellings. The 1950 zoning ordinance provided in Section 5–A, Paragraph 1: "No building or land shall be used for a use other than those permitted in the district in which such premises are located unless *. * * (b) such use existed prior to the effective date of this ordinance." The permit was granted to McClendon on the ground that the funeral parlor had existed as such prior to the zoning ordinance of 1950 and that consequently a legal nonconforming use had been established.

An appeal was taken to the Board of Adjustment by owners of property near the premises owned by McClendon. The board, after a hearing, allowed the permit of occupancy issued by the building commissioner to stand and a writ of certiorari to review the action of the board was sought in the Circuit Court of the City of St. Louis. The writ was duly issued and in compliance with it the board made its return with a full transcript of the evidence taken at the hearing on March 18, 1953. This showed that some objectors to the permit had appeared before the board and testified that the house contained no funeral paraphernalia and that it had been used as a rooming house since 1949. Some neighbors also testified that they had seen no funerals conducted from the place since 1948. Mr. Williams, the former owner, also appeared and stated that he had used the first floor of the building as a funeral parlor since 1930 and had conducted many funerals from it up to 1949. After that most of the funerals that he conducted were held from another establishment but a few of them were conducted from the premises in question, the last one being in 1953. He stated that he conducted no rooming house but rented apartments on the second floor of the building and occupied one as his own living quarters. Most of the block was residential and there had been no changes in the past ten years except that it had in recent years become a colored neighborhood whereas before it had been occupied by whites.

The present owner testified that he had purchased the place because he wished to occupy it as a funeral parlor and he knew that it had been used as such for some time. He said that he had repaired and fixed the place up for a continuation of this use. A witness in the real estate business testified that all of the street west of the block was commercial and that the funeral parlor had been there for a number of years and in no way affected the quality of the neighborhood.

The matter was submitted to the court upon the above transcript of the testimony heard before the board, but the court later set aside the submission and set the case down for the hearing of further testimony. At this hearing a building inspector for the city testified that the new owner had taken out one of the partitions on the first floor between what would be the reception room and the living room of the ordinary home and that the floors had been covered with a composition tile. The new owner had a permit for the remodeling and the inspector merely looked over the work in conformance with his duties.

The next-door neighbor testified that the inside of the place while it was occupied by Williams had a reception room of about 12 x 12 feet in size and a living room somewhat larger. What would have been used as a dining room in the ordinary residence contained a desk and chairs. The living room contained the conventional furniture used in such rooms. He did not know what was in the reception room by way of furnishings, but another witness testified that the reception room was carpeted and had chairs.

Williams again testified and stated that he had held hundreds of funerals from the place, but he employed the Hoppe Undertaking Company to do embalming for him.

He stated that he had had one or two cheap funerals at the home each year from 1950 on, but that he held most of his funerals elsewhere.

One of the drivers for the Hoppe Undertaking Company testified that Williams ordinarily arranged for a funeral and that one of Hoppe's drivers picked up the body. It was then embalmed by the company, placed in a casket, and delivered to Williams at the Washington Avenue address for the funeral. He stated that he was only one of the drivers and that he recalled that he had himself delivered bodies to the Washington Avenue address in 1951. Other testimony did not materially differ from that contained in the transcript of the hearing before the board.

The court held that the decision of the Board of Adjustment of the City of St. Louis affirming the building commissioner should be reversed and decreed that the permit to occupy the premises as a funeral parlor should be set aside and for naught held, and that the cost be paid by the board.

■ The respondent has moved for a dismissal of this appeal on the ground that the Board of Adjustment had no right of appeal and that it is not an aggrieved party within the meaning of the statute relating to appeal. The respondent arrives at this conclusion by the theory that the board's functions are quasi judicial and that it is not an interested party to the action in the circuit court and consequently cannot be aggrieved by a judgment reversing its order.

The board, under Section 89.090 RSMo 1949, V.A.M.S., is required to review, where a review is sought, any decision of an administrative official in relation to the zoning ordinances. Thus it is apparent that in review of the administrative act, the board is not usually determining an adversary action, that is, an action such as this where there are parties of adverse interest with one seeking to overthrow the administrative act and others to sustain it. It is determining, as required by statute, whether "there are practical difficulties or unnecessary hardship in the way of carrying out the strict letter" of the ordinance, or, as here, the existence of a legal nonconforming use. To effect these ends the same statute requires the board to "make such order, requirement, decision or determination as ought to be made and to that end shall have all the powers of the officer from whom the appeal is taken." Since it has all the powers of the building commissioner, it would appear that it is in reality simply the highest echelon in the administration of the provisions of the ordinance and that its function is judicial only to the extent that it does review the action of building commissioners and that its decision must be reached by the exercise of judgment. But this is true of many administrative decisions. Regardless of the character of its acts it is a party to the action on certiorari, for the writ is directed to the board and it is obliged to make its return. The statute authorizing a review by certiorari also provides that costs may be assessed against the board where it appears to the court that the board acted negligently or in bad faith. Certainly this provision would not be present unless it was the intention of the Legislature that the board had all of the rights of a party to the action.

One of the rights of a party is the right to appeal granted by Section 512.020 RSMo 1949, V.A.M.S., when such party is aggrieved by the judgment of any trial court. Whether or not the board comes within this provision has never been directly passed upon by the courts of Missouri, but such Boards of Adjustment have prosecuted appeals without their rights to do so having ever been questioned. In re Botz, 236 Mo. App. 566, 159 S.W.2d 367; Berard v. Board of Adjustment of City of St. Louis, Mo. App., 138 S.W.2d 731; Adams v. Board of Zoning Adjustment of Kansas City, Mo. App., 241 S.W.2d 35.

A similar point was raised in Shelley v. Missouri Commission for the Blind, 309 Mo. 612, 274 S.W. 688, and Gwaltney v. Missouri Commission for the Blind, 322 Mo. 44, 14 S.W.2d 988, where the Commission for the Blind appealed from a circuit

court judgment reversing its order refusing to award a pension to an applicant. The reversal caused no pecuniary loss to the Commission itself but the Supreme Court held that the Commission was "aggrieved" by a judgment which set aside its official act. This is quite analogous to the situation before us and under those cases and the applicable statutes it appears that the board has a right to appeal from a judgment of the circuit court reversing the board's order.

The appellant contends that the court erred in that it substituted its own judgment for that of the Board of Adjustment when the decision of the board was supported by competent evidence.

 This court went quite fully into the scope of judicial review of orders of the Board of Adjustment in Veal v. Leimkuehler, Mo.App., 249 S.W.2d 491, wherein we restated the rule that the circuit court could not substitute its own discretion in weighing the evidence for the discretion of the board. The review by certiorari is not a trial de novo, even though the statute authorizes the taking of additional testimony in the circuit court, for the purpose of the writ is to test the legality of the board's order. The order of the board cannot be set aside solely because the court considers the evidence in a different light unless the action of the board is clearly contrary to the overwhelming weight of the evidence. In re Botz, supra; Berard v. Board of Adjustment of City of St. Louis, supra; Adams v. Board of Zoning Adjustment of Kansas City, supra.

Applying the rule to the facts before us it is evident that Williams had made but little use of his premises as a funeral home after 1950 but he stated that he had conducted a few funerals from there up to 1953. Merriam-Webster Dictionary defines a funeral parlor or home as "premises which may be rented for funeral ceremonies" and it appears that there was substantial evidence before the board from which it could find and the weight of the evidence indicated that the premises were within this definition for the years before and after the passage of the ordinance and the circuit court erred in setting aside its order.

For the reasons stated, it is the recommendation of the Commissioner that the motion to dismiss this appeal be overruled and that the judgment of the circuit court be reversed.

PER CURIAM.

The foregoing opinion of WOLFE, C., is adopted as the opinion of the court.

The motion to dismiss the appeal is accordingly overruled and the judgment of the circuit court reversed.

RUDDY, Acting P. J., and BLAIR and ARONSON, Special Judges, concur.