William R. KOSTMAN, Commissioner of Finance, Appellant,

v.

PINE LAWN BANK AND TRUST COMPANY, a Missouri Banking Corporation, and William J. Bollwerk, Chairman, Missouri State Banking Board, et al., Respondents.

No. 59299.

Supreme Court of Missouri, En Banc.

Sept. 13, 1976.

Irven L. Friedhoff, Jefferson City, for appellant.

Albert Schoenbeck, St. Louis, Shook, Hardy & Bacon, Kansas City, D. Jeff Lance, St. Louis, and John H. Hendren, Jefferson City, for respondents.

BARDGETT, Judge.

The Commissioner of Finance of Missouri (commissioner) appealed to the Missouri court of appeals, Kansas City district, from the judgment of the circuit court of Cole county which judgment affirmed the decision of the Missouri State Banking Board (board) allowing respondent Pine Lawn Bank and Trust Co. (bank) to change its name and relocate. The board's decision, in effect, reversed the determination made by the commissioner on the bank's application.

The court of appeals by opinion held that the commissioner lacked legal standing to appeal the judgment of the circuit court and upon that ground affirmed the circuit court's judgment. This court sustained the commissioner's application for transfer pursuant to Art. V, sec. 10, Mo.Const., as amended 1970, to decide the question of whether the commissioner has legal standing to obtain review in circuit court of the board's decision and thereafter to appeal to the appropriate appellate tribunal in Missouri.

The court has concluded that the commissioner. of finance does not have the legal right or standing to seek review in circuit court from a decision and order of the state banking board. The opinion of the court of appeals, Kansas City district, authored by Ronald L. Somerville, Judge, is adopted as the opinion of this court and is set forth infra in quotes followed by additional comments of this court.

"Pitted against each other on this appeal are the Commissioner of Finance (hereinafter referred to as the Commissioner) and the State Banking Board, both of whom occupy official positions in the same division (Division of Finance) of the same department (Business and Administration) of the executive branch of state government. The root of this discordant intragovernmental confrontation is an application by a state chartered bank to amend its articles of agreement so as to permit it to change its name and relocate its main banking house.

"The respondents on appeal are the applicant bank and the chairman and members of the State Banking Board. The Commissioner is the sole appellant. Respondents vigorously contend that the Commissioner is not an 'aggrieved' person within the purview and meaning of Section 512.020, RSMo 1969, and therefore lacks legal standing to appeal from a judgment entered by the Circuit Court of Cole County affirming a decision of the State Banking Board permitting the applicant bank to amend its articles of agreement so as to change its name and effect a relocation of its main banking house. Apparently anticipating that his standing to appeal would become a crucial issue, the first of the four points asserted by the Commissioner before this court addresses that issue. The following delineation of facts is limited to outlining the progression of procedural events leading up to crucial issue which this court is called upon to decide.

"On January 15, 1974, the Pine Lawn Bank and Trust Company (heretofore and hereafter referred to as the applicant bank), pursuant to Section 362.325, RSMo 1969, applied to the Commissioner for permission and approval to amend its articles of agreement so as to permit it to change its name and relocate its main banking house from 6149 Natural Bridge Avenue, Pine Lawn, Missouri to the southeast corner of the intersection of Missouri Route 725 and Ladue Road, Ladue, Missouri. On June 18, 1974, the Commissioner, after having conducted an examination as prescribed by subparagraph 7 of Section 362.325, supra, refused to grant the applicant bank permission and approval to amend its articles of

agreement in the particulars heretofore mentioned. The applicant bank, pursuant to subparagraph 7 of Section 362.325, supra, timely appealed from the Commissioner's refusal to the State Banking Board. The Clayton Bank and the First National Bank of Clayton (hereinafter referred to as the opponent banks), as provided in subparagraph 3 of Section 361.095, RSMo 1969, were permitted to intervene in the hearing conducted by the State Banking Board pursuant to Section 361.094, RSMo 1969, regarding the applicant bank's appeal. The State Banking Board rendered its decision on July 26, 1974, whereby it reversed the Commissioner and granted the applicant bank permission to amend its articles of agreement as requested.

"On August 27, 1974, the Commissioner, ostensibly pursuant to Section 536.100, RSMo 1969, and Rule 100.03, filed a petition in the Circuit Court of Cole County for judicial review of the decision rendered by the State Banking Board. On August 30, 1974, the opponent banks did likewise. The separate petitions for review were ordered consolidated for hearing by the Circuit Court of Cole County since a common issue was presented by both petitions. On October 24, 1974, the applicant bank filed a motion in the Circuit Court of Cole County seeking to dismiss the Commissioner's petition for judicial review on the ground that he was not an 'aggrieved party' within the meaning of Section 536.100, supra, and Rule 100.03, supra, and therefore lacked the requisite legal standing to seek judicial review of the decision rendered by the State Banking Board. On November 15, 1974, the City of Pine Lawn was granted leave by the Circuit Court of Cole County to intervene in the hearing to be held on the consolidated petitions for judicial review.

"On November 20, 1974, the Circuit Court of Cole County overruled the applicant bank's motion to dismiss the Commissioner's petition for judicial review and, after all parties were heard, found, inter alia, that the decision of the State Banking Board was 'supported by competent and substan-

tial evidence upon the whole record' and entered judgment affirming same.[1]

"Intervenor, the City of Pine Lawn, and the opponent banks did not appeal from the judgment rendered by the Circuit Court of Cole County, and may therefore be said to have judicially acquiesced to its legal propriety. The Commissioner, however, refused to acquiesce to the legal propriety of the judgment rendered by the Circuit Court of Cole County and by a timely appeal to this court seeks reversal of said judgment on three grounds directed toward its merits. If the Commissioner be not an 'aggrieved party' within the purview and meaning of Section 512.020, supra, then he lacks legal standing to invoke appellate review of said judgment and it becomes unnecessary to address the three points asserted by him striking at the merits of the judgment.

"The weight of authority negates the right of an administrative officer of a branch of government, the position occupied by the Commissioner herein, who has suffered defeat at the hands of an administrative tribunal with jurisdiction to review his actions, the position occupied by the State Banking Board herein (Section 361.094, supra), to invoke judicial review of an administrative tribunal's decision absent statutory authority to do so. See *State ex rel. Broadway Petro. Corp. v. City of Elyria*, [18 Ohio St. 23] 247 N.E.2d 471 (Ohio 1969), and cases therein cited. The Commissioner asserts that subparagraph 3 of Section 361.-095, RSMo 1969, Section 536.100, RSMo 1969, and Section 512.020, RSMo 1969, statutorily vest him with authority to run the gamut of judicial review regarding the State Banking Board's reversal of his initial decision.

"That portion of subparagraph 3 of Section 361.095, supra, seized upon by the Commissioner reads as follows: 'At any hearing provided for in Section 361.094 the Commissioner of Finance shall be deemed a party . . . .' Section 361.094, RSMo 1969, referred to in subparagraph 3 of Section 361.-095, supra, statutorily impregnates the

---

1. The scope of judicial review is set forth in Section 536.140, RSMo 1969.

State Banking Board with jurisdiction to hear and by judicial order determination all appeals from refusals of the Commissioner to grant certificates of incorporation to proposed incorporators of banks and trust companies or refusals to grant permission to banks or trust companies to relocate and, as well as, from actions of the Commissioner granting certificates of incorporation to proposed incorporators of banks and trust companies or permitting banks and trust companies to amend their articles of agreement in order to achieve relocation. Said statute imposes no restraints or limitations whatsoever on the scope of the State Banking Board's review of specified matters coming before it on appeal from actions or refusals taken by the Commissioner; the Commissioner's actions or refusals, as the case may be, flow from ex parte proceedings (Section 362.030, RSMo 1969, relative to the granting of certificates of incorporation and Section 362.325, RSMo 1969, relative to amendment of articles of agreement to permit relocation), and when properly lodged before the State Banking Board for review have no ring of finality and are not inviolable, even though supported by competent and substantial evidence, since the State Banking Board may substitute its own discretion and judgment in determining the facts in light of the applicable law and override any prior determination made by the Commissioner. *Marshfield Community Bank v. State Banking Bd.,* 496 S.W.2d 17 (Mo.App.1973); and Section 361.094, supra. Ex parte actions or refusals of the Commissioner on appeal before the State Banking Board stand in complete deference to the latter's determination since the Commissioner's actions or refusals in no way inhibit, constrict, or limit the State Banking Board from substituting its own discretion and judgment (so long as compatible with statutory guidelines) in their resolution on appeal.

"Thus, in the administrative hierarchy involving appeals from specified actions and refusals of the Commissioner, the State Banking Board is statutorily clothed with an unfettered right to speak anew with finality at the administrative level regard-less of any conflicting views the Commissioner might possess. In a very real and practical sense, so far as echelons of administrative review are concerned, the Commissioner is subordinate to the State Banking Board and it is the superior authority. This conclusion is bolstered not only by the judicially recognized broad power of review bestowed upon the State Banking Board by Section 361.094, supra (*Marshfield Community Bank v. State Banking Board,* supra), but, as well, by the provisions of subparagraph 4 of Section 361.095 (subparagraph 3 thereof containing the statutory language principally relied upon by the Commissioner) which provides: 'The commissioner of finance shall act in accordance with any order of the state banking board made pursuant to section 361.094, but the order of the board shall be subject to judicial review as provided by law. Whether or not any review shall operate as a stay of the board's order shall be determined by the board.' This language bespeaks of the Commissioner's subservience to the State Banking Board regarding specified matters reaching it on appeal, and, standing alone, manifests a legislative intent that the Commissioner 'shall be deemed a party' at any hearing before the State Banking Board provided in Section 361.094, supra, for the purpose of being bound by all orders rendered by the State Banking Board until such time, if any, said orders have been countermanded on judicial review. The key to those who have the right to seek 'judicial review as provided by law' from final orders handed down by the State Banking Board is found in Section 536.100 of the Administrative Procedure Act, Chapter 536, RSMo 1969. Pertinent portions of the referenced section provide that '[a]ny person who has exhausted all administrative remedies provided by law and who is aggrieved by a final decision in a contested case, whether such decision is affirmative or negative in form, shall be entitled to judicial review thereof, as provided in section 536.100 to 536.140, unless some other provision for judicial review is provided by statute; . . . '. In clear and direct language the legislature appears

to have spelled out two conditions precedent that must be met before a person has a right to place his grievance from an administrative decision into the stream of judicial review: (1) he must have exhausted all administrative remedies provided by law and (2) he must have been aggrieved by a final administrative decision. The former presupposes him to be a person who possessed some administrative remedy. What administrative remedy did the Commissioner possess to exhaust? The obvious answer is none. It is beyond logical comprehension to envision the Commissioner appealing his own decision or refusal to the State Banking Board. Under Section 536.100, supra, the Commissioner had no right to invoke judicial review of the State Banking Board's decision at the circuit court level in the first instance, and this legal inability to do so stays with him throughout, even on appeal, since an appeal from the circuit court to the appellate court level is but the final step in the overall process of judicial review of decisions of administrative tribunals. With reference to appeals from the circuit court level to the appellate court level, subparagraph 6 of Section 536.140, RSMo 1969, also a part of the Administrative Procedure Act provides that 'appeals may be taken from the judgment of the court as in other civil cases.' The right of appeal in civil cases is governed by Section 512.020, RSMo 1969, which provides, inter alia, that '[a]ny party to a suit aggrieved by any judgment of any trial court in any civil cause from which an appeal is not prohibited by the constitution, nor clearly limited in special statutory proceedings, may take his appeal to a court having appellate jurisdiction . . . ' from certain delineated orders and judgments.

"The Commissioner contends he is 'aggrieved' within the contemplation of Section 512.020, supra, by the judgment rendered by the Circuit Court of Cole County affirming the decision of the State Banking Board. Since he lacked standing to enter the stream of judicial review initially it is impossible to perceive how he can shake that disability after the Circuit Court of Cole County has spoken and now claim legal standing before this court to attack the judgment below. Since the judgment below affirmed the decision of the State Banking Board, the Commissioner stands in the anomalous position of a subordinate questioning the wisdom and propriety of a superior authority's decision. It is inconceivable that the legislature, by employment of the language 'the commissioner of finance shall be deemed a party' at any hearing before the State Banking Board provided for in Section 361.094, supra, intended such an anomalous result. The Commissioner vies that such a result is manifested by the employed language, however incongruous the result, because the legislative intent heralded thereby was to clothe him with legal authority to affirmatively seek judicial review to protect the public's interest in a healthy banking system in this state. With all due respect to the Commissioner, this is an audacious argument bereft of statutory or logical sustenance. In the matter of chartering and relocating banks and trust companies the legislature in its wisdom obviously saw fit to make the State Banking Board (Section 361.094, supra, and *Marshfield Community Bank v. State Banking Board,* supra), composed of five members with variable backgrounds and political allegiances (Section 361.097, RSMo 1969), ultimate guardian of the public's interest at the administrative level as opposed to a single individual such as the Commissioner.

"A virtually unlimited number of persuasive arguments can be marshaled to support the sagacity of the general assembly in withholding authority from the Commissioner of Finance to affirmatively invoke judicial review of decisions of the State Banking Board at any level of the judicial process. The following are but a few of many. To permit the Commissioner to invoke judicial review would put him in the position of a subordinate administrative officer seeking to nullify the legislatively authorized action of a superior authority, the State Banking Board. Such would not be conducive to intradivisional harmony and accord and would serve only to invite dis-

sension that would erode public confidence and continuity of administrative policy inevitably detrimental to the public interest. It seems obvious that one of the purposes behind establishment of the State Banking Board was to provide affected persons and entities outside the realm of the Division of Finance a forum for de novo administrative review of decisions and refusals of the Commissioner regarding certain specified matters. This purpose, unquestionably salutary, would be defeated if the Commissioner is permitted to attack or disregard a decision of the State Banking Board favorable to persons or entities who are strangers to the Division of Finance. Permitting the Commissioner to seek remedial review of decisions of the State Banking Board at the circuit court level, and failing there, at the appellate court level, would work havoc with the whole scheme of review, administrativewise and judicialwise, promulgated by the general assembly with respect to the chartering and relocation of banks and trust companies since the State Banking Board is statutorily imbued with the prerogative of speaking with finality at the administrative level. Further, to permit such would do violence to the concept of administrative finality so far as applicable to successful private entities or persons whose prevailance at the final administrative level stood judicially unchallenged by opposing entities or persons from the private sector. Finally, to permit such would place the Commissioner in the intolerable position of vying with the State Banking Board as to whose point of view truly represents the official position of the Division of Finance as to what is deemed best for protection of the public's interest in administration of the laws relative to the chartering and relocation of banks and trust companies at the administrative level.

"The Commissioner has cited numerous decisions in his brief from this and other jurisdictions in support of his claim that he is 'aggrieved' within the meaning of Sections 536.100 and 512.020, supra, and therefore possesses legal standing to maintain the present appeal. A careful analysis of them, in the order cited, reveals that his reliance upon them is misplaced.

"*Dubinsky Brothers, Inc. v. Industrial Commission of Mo.,* 373 S.W.2d 9 (Mo.1963), holds that the Industrial Commission and the Division of Employment Security were 'aggrieved' and entitled to appeal from an adverse circuit court judgment, the effect of which would have depleted the general unemployment benefit fund, since they were charged with the protection of said fund. No legal parallel can be drawn between the status of the Industrial Commission and the Division of Employment Security in *Dubinsky Brothers* and the Commissioner in the present case.

"The relevant issue in *In Re St. Joseph Lead Company,* 352 S.W.2d 656 (Mo.1961), was whether St. Francois County was 'aggrieved' by an order of the State Tax Commission reducing the assessed valuation of St. Joseph Lead Company's property, thereby entitling the county to judicial review of the State Tax Commission's order. In essence, the court held that the county was 'aggrieved' inasmuch as it stood to lose considerable tax revenue if the order of the State Tax Commission was permitted to stand. No comparable situation exists in the present case.

"*State v. Donnelly,* [365 Mo. 686] 285 S.W.2d 669 (Mo. banc 1956), factually involving earlier and quite different applicable law, basically presented the same question now before this court, i. e., whether the then Commissioner of Finance had legal standing to seek judicial review of a decision of the Board of Bank Appeals, the antecedent counterpart of the State Banking Board, which set aside an order of the then Commissioner refusing a certificate of incorporation to the proposed incorporators of a new bank and ordered him to grant the requested certificate of incorporation. As previously noted, the issue was subject to the banking laws in existence prior to extensive amendments made to them in 1955. When the case reached the Supreme Court it referred to present Section 361.095 (enacted in 1955), supra, more particularly that part providing that 'commissioner of fi-

nance shall be deemed a party' at any hearing before the State Banking Board provided for in Section 361.094, supra, as indicative that the legislature did not intend for the Commissioner of Finance under the previously existing and controlling statutory law to seek judicial review of decisions of the Board of Bank Appeals reversing initial decisions of his. Although certain dictum in *Donnelly* strongly implies that present Section 361.095, supra, vests the Commissioner with authority to seek judicial review, the court therein did not specifically so hold, because resolvement of the precise issue before it did not require it to do so. This court respectfully concludes that the dictum in *Donnelly,* concededly strong and suggestive, does not preclude it from judicially resolving this crucial and publicly important issue, where, as here, it is squarely presented in sharp focus on the basis of prevailing and applicable law. To do otherwise would be to shirk judicial responsibility.

"Only a perfunctory reference need be made to *Central Bank of Clayton v. State Banking Bd. of Mo.,* 509 S.W.2d 175 (Mo. App.1974), since the Commissioner cites it for the sole purpose that the public has an interest 'in a healthy bank system'.

"*Cunningham v. Leimkuehler,* 276 S.W.2d 633 (Mo.App.1955), and *Shelley v. Missouri Commission for the Blind,* 309 Mo. 612, 274 S.W. 688, 691 (banc 1925), cited by the Commissioner, involve situations where aggrieved private parties initiated judicial review at the circuit court level and upon achieving success, the administrative tribunals involved, which were the highest echelons in the administrative review process, appealed from circuit court judgments adverse to them. In both cases it was held on appeal that the respective administrative tribunals were 'aggrieved' by the respective circuit court judgments since they had an interest in vindicating and upholding their official acts. The Commissioner's status here is in no way akin to the administrative tribunals in *Cunningham* and *Shelley.* No official act of the Commissioner is involved in the present appeal. His initial refusal to

grant the applicant bank permission to amend its articles of incorporation in order to change its name and relocate ceased to have even the slightest semblance of an official act when the State Banking Board held otherwise in view of the latter's broad and all inclusive power of review. The State Banking Board's order completely dissipated the Commissioner's act and for all practical purposes rendered it a nullity ab initio. The only official act involved in the judicial review before the Circuit Court of Cole County was that of the State Banking Board. By his appeal to this court the Commissioner seeks to upset the official act of the State Banking Board. He does not seek to uphold or vindicate the official act of the State Banking Board and no presently viable act on his own exists to be vindicated or upheld.

"*In re Halifax Paper Company, Inc.,* [259 N.C. 589] 131 S.E.2d 441 (N.C.1963), *Dixon v. Zoning Board of Appeals,* [19 Conn.Sup. 349] 113 A.2d 606 (Conn.1955), *Muench v. Public Service Commission,* [261 Wis. 492] 53 N.W.2d 514 (Wisc.1952), *Board of Adjustment of City of Fort Worth v. Stovall,* [147 Tex. 366] 216 S.W.2d 171 (Tex.1949), *Rommell v. Walsh,* [127 Conn. 16] 15 A.2d 6 (Conn.1940), *Board of Com'rs. v. Woodford Consol. School Dist. No. 36,* [165 Okl. 227] 25 P.2d 1057 (Okla.1933), and *Moode v. Board of County Com'rs.,* [43 Minn. 312] 45 N.W. 435 (Minn.1890), relied on by the Commissioner, have been carefully noted by this court. After doing so, it concludes that the statutory provisions and facts in each are so dissimilar to the statutory provisions and facts pervading the issue before this court that they lack persuasive force or directional assistance.

"In summation this court concludes that no statute expressly authorizes the Commissioner to invoke judicial review of orders of the State Banking Board at any judicial level and when the various statutory provisions heretofore cited which are in pari materia are collectively viewed no legislative intent to vest the Commissioner with such a right emerges. Although the effort of the Commissioner to seek judicial review

of the judgment of the Circuit Court of Cole County is undoubtedly well intentioned and highly motivated there is no statutory or case law to countenance it and therefore this court holds that the Commissioner is devoid of legal standing to do so.

"Since the Commissioner, the sole appellant, lacks legal standing to maintain this appeal the judgment entered by the Circuit Court of Cole County in this cause must stand and, accordingly, said judgment is affirmed."

The commissioner, before this court, continues to place heavy reliance upon the provision of section 361.095, subd. 3, RSMo 1969, which provides in part, "At any hearing provided for in section 361.094 the commissioner of finance shall be deemed a party, . . ." and the court's language in *State ex rel. Rouveyrol v. Donnelly,* 365 Mo. 686, 285 S.W.2d 669 (banc 1956), which suggests that had such a provision been part of the law under which *Donnelly* was decided the court would have held the commissioner was entitled to petition for judicial review and thereafter appeal from the circuit court's judgment.

The provision of section 361.095, subd. 3, quoted supra was not simply an amendment to an existing law but was part of H.B. 212, Sixty-eighth General Assembly (Laws of Mo.1955, p. 263), which established the state banking board as the board to hear appeals from certain decisions of the commissioner. H.B. 213 (Laws of Mo.1955, p. 266) abolished the former board of appeals which consisted of the governor, lieutenant governor, and the attorney general. The issue of standing to petition for judicial review under section 361.095, subd. 3, was not directly involved in *State ex rel. Rouveyrol v. Donnelly, supra,* but it is the issue in this case. A preliminary question is whether the 1955 act made any substantial change in the office of commissioner of finance vis-a-vis the board with respect to appeals taken from the commissioner's orders.

Under the law prior to 1955, when these appeals were heard by a board of appeals, the commissioner was required to present all statements, reports, data and files, and any other information bearing on the subject to the board of appeals and thus was required to participate in the appeal before the board of appeals. Sec. 362.045, subd. 2, RSMo 1949 (repealed 1955).

Under the 1955 act the banking board continues to have access to all of the records and information used by the commission in making his decision, section 361.-094, RSMo 1969, and the commissioner is "deemed a party" to the hearing on such appeals, section 361.095, subd. 3, RSMo 1969, and thereby is still required to participate in the hearing of such appeals.

Under the law prior to 1955, the commissioner was required to "act in accordance with such decision" of the board of appeals, section 362.045, subd. 3, RSMo 1949 (repealed 1955). Under the 1955 act the commissioner is required to "act in accordance with any order of the state banking board made pursuant to section 361.094 . . .", section 361.095, subd. 4, RSMo 1969. Thus under the law prior to and subsequent to 1955 the commissioner has no discretion after the appeals tribunal has ruled. He was and is bound to abide by the decision of the appeals tribunal and there is no provision which makes an exception to this requirement nor which grants the commissioner the right to seek judicial review of that decision.

Under the law prior to 1955, the judicial review was governed by the provision of section 386.510, RSMo 1949. See section 362.045, subd. 3, RSMo 1949 (repealed 1955). Section 386.510 is the statute applicable to judicial review of public service commission orders.

Section 386.510, RSMo 1949, provided, inter alia, that, "The commission and each party to the action or proceeding before the commission shall have the right to appear in the review proceedings." However, even though the commissioner was required to participate in the hearing before the old board of appeals and for that purpose may have been considered in some sense a party before that board, this court held he had no right to seek judicial review of the board's

decision. *State ex rel. Rouveyrol v. Donnelly, supra.*

The provision of section 361.095, subd. 3, supra, that the commissioner shall be "deemed a party" at hearings before the banking board provided for in section 361.094, accomplishes the same purpose as the former provision of section 362.045, subd. 2, RSMo 1949 (repealed 1955), which required the commissioner to present all documents and other information on the subject in his possession to the old board of appeals. It also allows him to have subpoenas issued by the board in order to adequately present his position to the board in a formal hearing. This has the effect of getting all relevant information before the board in order that it can perform its duty of deciding the matter.

The initial decision of the commissioner is not subject to judicial review. His is merely the initial decision within the agency on the matter. The board's hearing is fully de novo and the board need give no weight whatever to the decision of the commissioner. Standing to appeal to circuit court from the board's decision is governed by section 536.100, RSMo 1969, and requires that the person (party) *be aggrieved* by the board's decision.

The question of whether the commissioner of savings and loan in Wisconsin was an aggrieved party so as to seek judicial review of a decision of the savings and loan review board which reversed the commissioner's decision was the issue in *Mortensen v. Pyramid Sav. & L. Ass'n of Milwaukee*, 53 Wis.2d 81, 191 N.W.2d 730 (1971). In *Mortensen* the trial court dismissed the commissioner's petition for review from the review board's decision on the ground that the commissioner is not a person aggrieved and directly affected by a decision of the review board. The Supreme Court of Wisconsin affirmed the trial court saying at 191 N.W.2d at 731–732:

"The basic reason for this interpretation of the statute is that the commissioner of savings and loan is a part of the decisional process of the savings and loan department and his decision only initially determines the issue in the administrative proceeding. An administrative officer is not a party for the purposes of seeking a review of a reversal of his determination by a board of appeals. See 2 Am.Jur., Administrative Law, p. 177, sec. 368. It is stated in 2 Am.Jur., Administrative Law, p. 397, sec. 576 'An administrative officer who made an original decision which was appealed to a higher administrative authority was held to have no interest as a party which would entitle him to appeal from the overruling of his decision.' To the same effect is 73 C.J.S. Public Administrative Bodies and Procedures § 159, p. 497; *Dept. of Labor v. Unemployment Comp. Bd. of Rev.* (1949), 362 Pa. 342, 67 A.2d 114. Unless the statute expressly so provides, an aggrieved party is one outside the decisional process who is directly affected.

"But it is argued by the commissioner that because he alone has the legal responsibility to supervise the savings and loan industry and he is charged with the protection of public rights, these interests are sufficient to place him within the category of an aggrieved person directly affected by the decision of the savings and loan review board. While the commissioner has a personal interest in seeing his opinion affirmed, such interest does not constitute him as an official an aggrieved person. He relies on *Muench v. Public Service Commission* (1951), 261 Wis. 492, 53 N.W.2d 514, and *Norway v. State Board of Health* (1966), 32 Wis.2d 362, 145 N.W.2d 790. In *Muench* we held a citizen had sufficient legal interest in the use of navigable waters to challenge a public service commission's decision; and in *Norway,* we held the town's governmental right to prevent pollution was a sufficient basis to render the town an aggrieved person entitled to challenge an administrative agency's sewerage treatment plan. But the important point is that in neither of these decisions was the citizen or the town a part of the decisional administrative process; they were bystanders, outside the decisional process.

. . . . .

"Nor is the commissioner the final authority of this department so as to give him a legal interest. The review board may review certain actions of the commissioner. While it is true that sec. 15.821, Stats., defining the review board's responsibility does not list sec. 215.03(9) respecting an application for a branch, the review board may, contrary to the arguments of the commissioner, review such decision under sec. 215.04(4) by virtue of sec. 215.03(9)(c); and sec. 15.821(1) does give the review board jurisdiction of matters covered by sec. 215.04.

"The commissioner's decision in this matter is not final also because in reviewing the decision of the commissioner, the review board may substitute its judgment, although the findings of the commissioner are supported by substantial evidence. No statute limits the scope of review by the review board and without such limitation it may substitute its own judgment in determining the facts and the law applicable thereto. Prior to 1961 the savings and loan review board, then known as the advisory committee, reviewed the commissioner's denials of applications for certificates of authority in the manner provided in sec. 220.035, Stats., which requires the acceptance of factual findings which were supported by substantial evidence. However, the recreation of ch. 215 by ch. 315, Laws of 1963, made the review of denials of applications for certificates of authority reviewable under statutes which are now numbered 215.04(1) and 215.04(4) and these sections do not provide the review board must give weight to the factual findings of the commissioner. Although this change involves only the specific duty of the commissioner in reference to applications for certificates of authority, the change makes the scope of review of this type of decision compatible with the broader review of other decisions of the commissioner."

In *Minn. Bd. of Health v. Gov., Etc., App. Bd.*, 230 N.W.2d 176 (Minn.1975), the issue was presented as to whether the state board of health was a "person aggrieved" so as to seek judicial review of a decision of the certificate of need appeal board which reversed the decision of the board of health. In the context of the instant case, the Minnesota board of health is comparable to our commissioner of finance and the governor's certificate of need appeal board is comparable to the banking board of Missouri.

The Minnesota Supreme Court quoted with approval from *Mortensen,* supra, and held the Minnesota board of health was not a "person aggrieved" so as to have standing to seek judicial review. The reasoning of the Wisconsin Supreme Court in *Mortensen* and the Minnesota Supreme Court in *Minn. Bd. of Health* is sound and in accordance with the prevailing law on the subject. There are no cases cited in the commissioner's brief nor has this court found any case where it was held that a person occupying a position similar to our commissioner of finance was an *aggrieved* party so as to give him standing to seek judicial review of the decision of the administrative board (banking board) which heard appeals from the initial decision of the commissioner.

The court holds that the commissioner of finance is not a person aggrieved by a decision of the banking board and therefore does not have standing to seek judicial review of the banking board's decision. He lacks standing to maintain this appeal and therefore the judgment of the circuit court is affirmed.

MORGAN, HENLEY, DONNELLY, JJ., and HIGGINS, Special Judge, concur.

FINCH, J., dissents in separate dissenting opinion filed.

SEILER, C. J., dissents and concurs in separate dissenting opinion of FINCH, J.

HOLMAN, J., not sitting.

FINCH, Judge (dissenting).

I must respectfully dissent.

Sec. 361.094 [1] provides that the state banking board shall hear and determine appeals from the commissioner of finance

1. All statutory references are to RSMo 1969 unless otherwise specified.

with reference to such matters as granting or refusing certificates of incorporation for proposed banks or permitting or denying requested relocations. In such hearings the board hears evidence and may substitute its own discretion and judgment in determining the matter on appeal. Sec. 361.095.3 provides that "At any hearing provided for in section 361.094 the commissioner of finance shall be deemed a party * * * " and § 361.095.4 provides that "The commissioner of finance shall act in accordance with any order of the state banking board made pursuant to section 361.094, but the order of the board shall be subject to judicial review as provided by law". The question we must resolve is whether, under the foregoing statutory provisions, the commissioner of finance has standing to seek review of a decision of the banking board as he did in this case.

The foregoing sections, subject to amendments adopted in 1967 which are not material to the question at issue,[2] were enacted in 1955.[3] Prior thereto, appeals from actions by the commissioner were to a board of appeals. The statute then provided that the board of appeals should have access to "any and all statements, reports, data and files in the office of the commissioner" and that he "shall present all such documents and any other information bearing on the subject, in his possession, to the board." Sec. 362.045.2 RSMo 1949. It did not provide that the commissioner of finance should be a party to the proceedings before the board of appeals.

The foregoing provisions of Chapter 362 of RSMo 1949 were repealed in 1955. As previously noted, a new statute was enacted whereby a state banking board was created and appeals from decisions of the commissioner of finance were to be heard by said banking board. Sec. 361.095 specifically stated that at any such hearing before the banking board the commissioner should be deemed a party.

Shortly thereafter, this court decided *State ex rel. Rouveyrol v. Donnelly,* 365 Mo.

686, 285 S.W.2d 669 (banc 1956), a unanimous opinion authored by Judge Storckman. In that case, in construing the law as it existed prior to the 1955 changes, the court said "Nor is there any provision in the applicable statutes giving to the commissioner of finance any rights as a party after the board of appeals has obtained jurisdiction. * * * An administrative agency is not a part to a litigation as that term is customarily used and should not be so considered unless the legislature has so provided." 285 S.W.2d at 677.

After so stating, the opinion then took note of the enactment of the new chapter in 1955, saying at 677–678:

"*The legislative construction of the banking act confirms the conclusions which we have reached. The 68th General Assembly amended the banking laws to provide* for an appeal board of five members to be appointed by the governor and further specifically provided *that the commissioner of finance shall be deemed a party to an appeal proceeding before the board* and that certain specified banks may intervene. Section 361.095, RSMo 1955 Supp., V.A.M.S., L.1955, H.B. 212, § 5. *The fact of this amendment is 'a significant factor' and highly persuasive that the prior law did not contemplate that the commissioner of finance and the banks specified were parties to the proceedings or their review. State ex inf. Gentry v. Long-Bell Lumber Co.,* 321 Mo. 461, 12 S.W.2d 64, 80[5]. *The specific provision of the amendment that the commissioner be deemed a party on appeal and that other banks be permitted to intervene is a legislative construction that the right did not exist under the law applicable to this case. State ex rel. Bank of Nashua v. Holt,* 348 Mo. 982, 156 S.W.2d 708, 712[3]. *This rule of construction was applied in the case of Drainage District No. 23 v. Hetlage,* 231 Mo.App. 355, 102 S.W.2d 702, 709[8], wherein it was held: "We conclude, that from the legislative construction of article 1, chap-

---

**2.** Laws 1967, p. 445, S.B. 1.

**3.** Laws 1955, p. 263, H.B. 212.

ter 64 [Section 242.020 et seq. RSMo 1949, V.A.M.S.], as indicated by the subsequent amendment thereof, drainage districts organized under the provisions of said article 1, chapter 64, did not have the power to bring suit to redeem or to bid at tax sales for state and county taxes prior to this amendment, and that consequently, it enacted this statute for the purpose of expressly conferring such authority upon *circuit court* districts. While this legislative interpretation is not conclusive, it is highly persuasive.'" (Emphasis supplied.)

Clearly, the court was expressing the view that now certain specified banks could intervene and be parties and that they, together with the commissioner of finance, were for the first time parties to the proceedings on appeal. That was the interpretation of § 361.095 expressed by this court in *Donnelly.*

The principal opinion dismisses *Donnelly* as merely containing dicta, even though "concededly strong and suggestive", and as not having ruled the question of the commissioner's right as a party to appeal since the meaning of § 361.095 was not the issue in that case. It then goes on to adopt a construction of § 361.095 which says, in effect, that the commissioner's rights are the same as in the statute repealed in 1955 and he has no standing as a party to appeal.

The interpretation of the statute expressed in *Donnelly* may not be dismissed or disregarded so casually as mere dicta. *In Phillips Pipe Line Co. v. Brandstetter,* 241 Mo.App. 1138, 263 S.W.2d 880 (1954), the court had before it the question of whether a statute authorized pipe line companies to institute condemnation proceedings. In holding that they did have such authority, the court pointed out that it was construing a statute enacted in 1919 and then said, at 884–885: "We * * * must take into consideration the comments which have been made by courts (conceding that none have ruled this precise issue), as well as the practical use made of the statute." The court then noted four decisions containing

dictum to the effect that the statute conferred on pipe line companies the power of eminent domain. Then, significantly, the court stated at 885:

"Thus on four distinct occasions in Missouri judicial comments have been made, although not directly necessary, to the effect that Section 523.010 RSMo 1949, V.A.M.S. has granted a substantive right of condemnation to pipe line companies. *The earlier two of the four Missouri cases just cited are especially significant because after those opinions were published* (in 1935 and 1940, respectively,) *there was no effort, in any of the several sessions of the General Assembly subsequently convened, to amend the law or to express any other or different legislative intent, not in accord with said judicial dicta. See Willott v. Willott,* 333 Mo. 896, 62 S.W.2d 1084, loc. cit. 1085–1086, 89 A.L.R. 114; *Curtis Pub. Co. v. Bates,* 363 Mo. 287, 250 S.W.2d 521; *Robertson v. Manufacturing Lumbermen's Underwriters,* 346 Mo. 1103, 145 S.W.2d 134." (Emphasis supplied.)

Twenty years have passed since this court in *Donnelly* expressed the view that the effect of newly enacted § 361.095 was to make the commissioner of finance a party to the appeal proceedings with right of appeal, thereby constituting a substantial change from the prior statute under which neither the commissioner nor certain specified banks which might be interested "were parties to the proceedings or their review". As the court held in *Phillips Pipe Line,* this judicial dicta is significant, particularly in view of the fact that in the many legislative sessions intervening between 1956 and 1976, there has been no effort to amend the law so as to express a legislative intent not in accord with the interpretation expressed in *Donnelly.* See also *City of St. Louis v. State Tax Commission,* 524 S.W.2d 839, 845 (Mo. banc 1975).

Another matter of significance is the fact that in 1967 the legislature made some changes in § 361.095 *but it reenacted without change* the language whereby the com-

missioner of finance was made a party,[4] i. e., the language construed in the dicta in *Donnelly.* This reinforced and reconfirmed the legislative acquiescence in the *Donnelly* interpretation of § 361.095. Such a view was expressed in *State v. Schenk,* 238 Mo. 429, 142 S.W. 263, 270 (1911), as follows:

> "*We regard as significant the fact that notwithstanding the construction which has been put upon these laws by the decisions of this court* referred to, by the acts of the various Governors making appointments, and by the certificates contained in the official publication of the session acts, *the Legislature, in 1909, adopted the same phraseology in the declaratory act,* and also in the general act concerning the time when laws should go into effect. *According to the ordinary rules of construction, it must be held that the Legislature re-enacted these laws with the construction which had been so placed upon them. * * * "* (Emphasis supplied.)

In addition to the foregoing, it is well settled under the doctrine of contemporaneous construction that interpretation of a statute by those charged with its administration is entitled to great weight. *L & R Distributing, Inc. v. Missouri Department of Revenue,* 529 S.W.2d 375 (Mo.1975); *State ex rel. Jackson County v. Public Service Commission,* 532 S.W.2d 20 (Mo. banc 1975); *Foremost-McKesson, Inc. v. Davis,* 488 S.W.2d 193 (Mo. banc 1972). The commissioner of finance is charged with the administration of the statutes relating to the Department of Finance and to banks. Over the intervening years he has interpreted § 361.095 as making him a party to appeals from his decisions to the banking board and giving him standing to seek judicial review of decisions of the state banking board. For example, in *Central Bank of Clayton v. State Banking Board of Mo.,* 509 S.W.2d 175 (Mo.App.1974), the commissioner of finance, after an investigation, issued a charter for a proposed new Central Bank of Clayton. Other banks appealed to the state banking board which conducted a

hearing and then issued an order revoking the charter which the commissioner had issued. The commissioner and Central Bank appealed that decision to the circuit court. It affirmed the decision of the banking board to revoke the charter. Again, both Central Bank *and the commissioner* appealed the decision to the Missouri Court of Appeals, St. Louis District. In its opinion the court dealt with the issue of whether Central Bank was a "person" capable of being an aggrieved party which could seek review, but no question was ever raised as to the status of the commissioner as a proper party to the appeal by either the banking board or parties to the case. Thus, the commissioner, charged with administration of Chapter 361, interpreted it as giving him the status of a party with the right of appeal as an aggrieved party.

Another example of such an interpretation of the statute appears in *Mark Twain Cape Girardeau Bank v. State Banking Board,* 528 S.W.2d 443 (Mo.App.1975), wherein the commissioner issued a charter for the proposed bank. On appeal by objecting banks, the banking board revoked the charter. The circuit court affirmed and an appeal was taken. The commissioner as well as the Mark Twain Bank are shown as parties to that appeal in the court of appeals and, of course, the commissioner necessarily was a party in the circuit court.

Again, in the instant case, the commissioner followed the interpretation of § 361.095 which he and his predecessors had consistently adopted and appealed from the decision of the banking board to the circuit court and thereafter took an appeal to the court of appeals. So far as I can ascertain, the motion filed by Pine Lawn Bank and Trust Co. in this case seeking to dismiss the commissioner's appeal on the basis that he was not an aggrieved party and had no right to appeal is the first such instance since § 361.095 was enacted in 1955. On the basis of the interpretation of § 361.095 by this court in *Donnelly,* the legislative acquiescence therein for twenty years, the reenactment by the legislature of the identical

---

4. Laws 1967, p. 445, S.B. 1.

language in 1967, long after the decision in *Donnelly,* and the interpretation of the statute over the years by the commissioner in appealing and participating in appeals from decisions of the banking board, I would hold that the commissioner of finance is a party in such proceedings and has a right to seek and participate in judicial review of decisions of the state banking board. Such interpretation is, in my judgment, a proper and correct interpretation of § 361.095.

The principal opinion holds that the commissioner has no interest in the outcome and cannot be an aggrieved party, but I cannot agree. He is charged with the administration of the State Division of Finance, including supervision of the banking industry, (§ 361.010) and in so doing, he represents the interests of the public.[5] On such a basis this court in *Dubinsky Brothers, Inc. v. Industrial Commission of Mo.,* 373 S.W.2d 9 (Mo. banc 1963), held that the Industrial Commission was permitted to appeal. See also *Shelley v. Missouri Commission for the Blind,* 309 Mo. 612, 274 S.W. 688 (banc 1925); *Gwaltney v. Missouri Commission for the Blind,* 322 Mo. 44, 14 S.W.2d 988 (1929); and *In re St. Joseph Lead Co.,* 352 S.W.2d 656 (Mo.1961).

The principal opinion places considerable reliance on *Mortensen v. Pyramid Sav. & Loan Ass'n of Milwaukee,* 53 Wis.2d 81, 191 N.W.2d 730 (1971). However, that decision was based on the general philosophy that an administrative officer whose decision is appealed to and overruled by a higher administrative authority is not a party and has no interest as a party which would entitle him to appeal and seek judicial review of the decision of the higher administrative authority. It was not based upon an interpretation of the meaning and effect of a Wisconsin statute containing the language which appears in § 361.095. Instead, it provided only that "Any final order or determination of the review board shall be subject to review under ch. 227". Sec. 215.-04(6) W.S.A.1963. That language was more nearly akin to what the Missouri statutes provided before the 1955 legislation.[6]

Subsequent to the decision in *Mortensen,* the Wisconsin legislature amended § 215.-04(6) in order to make it unmistakably clear that it was intended that the commissioner, if reversed or modified by the review board, should be deemed an aggrieved party entitled to appeal. The Wisconsin legislature obviously was not shocked by the idea of the commissioner seeking judicial review of the decision of the review board (in Missouri, the state banking board) if it reverses his decision. On the contrary, it recognized the importance of allowing the commissioner to participate in appeals and to take appeals, if necessary. That, in my judgment, is what our legislature wisely did in 1955.

The principal opinion also places considerable reliance on the case of *Minn. Bd. of Health v. Gov., Etc., App. Bd.,* 230 N.W.2d 176 (Minn.1975). I consider it to be inapplicable. In the first place, the Minnesota statute did not contain a provision such as § 361.095 making the Board of Health a party to proceedings before the Minnesota Appeal Board. In addition, the Minnesota Board of Health, unlike our commissioner of finance, acted only after notice and an opportunity to be heard. It is functioned in a quasi-judicial capacity, not ex parte as does our commissioner of finance. In my view, *Minn. Bd. of Health* provides no authority to support the result reached by the principal opinion herein.

---

5. There can be instances in which the commissioner would be the only party to seek judicial review. For example, assume that a group seeks a bank charter in a small community and the commissioner concludes that a bank is not justified. The incorporators appeal and the banking board issues a charter. There are no objecting banks and unless the commissioner may appeal as an aggrieved party, there is no one to seek judicial review and thereby protect, if necessary, the interest in avoiding the char-

tering of banks which might not be economically justified.

6. It is of interest that *Mortensen* cited and relied on 2 Am.Jur.2d, Administrative Law, § 576 (1962), and that the language in said Am.Jur.2d section was, in turn, based upon the decision of this court in *Donnelly* which interpreted the pre-1955 statute. Obviously, *Mortensen* is not authority for construing present § 361.095.

I would hold that the commissioner is an aggrieved party in a contested case and that he is permitted to appeal. I do not reach the merits of the appeal because the principal opinion did not decide such questions.