**KANSAS CITY, Missouri, a Missouri Municipality, W. Yates, Webb, Director, Liquor and Amusement Control, Plaintiffs-Respondents,**

v.

**James M. REED, Jr., et al., Defendants-Appellants.**

**No. KCD 27550.**

Missouri Court of Appeals, Kansas City District.

Jan. 31, 1977.

James A. Polsinelli, Shapiro, Polsinelli, Waldo, Schulte & Wehrman, Kansas City, for defendants-appellants.

Aaron A. Wilson, City Atty., Rex G. Bostwick, Asst. City Atty., Kansas City, for plaintiffs-respondents.

Before DIXON, P. J., and NORMILE, CONLEY and BELT, Special Judges.

BRUCE NORMILE, Special Judge.

Forty-two years ago, on August 17th, 1934, Albert Vaccaro was driving an automobile with his older brother in the front seat and his parents and a bushel basket with twenty-six half-pints of moonshine whiskey belonging to them in the back seat. Vaccaro and his brother were arrested. After a plea of guilty to a charge of feloniously transporting intoxicating liquor intended for sale, the nineteen year old Vaccaro was sentenced to four months in the Platte County jail. The charges against the brother were dismissed.

After becoming twenty-one, Mr. Vaccaro has been continually engaged in his occupation as a bartender or employee in a business selling alcoholic beverages at retail in the Kansas City area to the present time. Since approximately 1951 or 1952, the City of Kansas City has issued "Employee's Permits" to all persons employed in the retail sale of alcoholic beverages under the provision of The Alcoholic Beverage Control Ordinance, which is now Kansas City, Mo.Code of General Ordinances, ch. 4, art. VI, § 4.38 (1967). Since that time, Mr. Vaccaro has made yearly applications for renewal of this "Employee's Permit." These applications did disclose the 1934 conviction and the Director of Liquor Control issued Vaccaro yearly "permits" until until 1970.

In that year the Director "discovered" the conviction and issued a temporary permit while Mr. Vaccaro sought to void the 1934 conviction in the United States District Court. However, the District Court found the evidence insufficient to find an involuntary plea and refused to set the plea aside. On appeal to the United States Court of Appeals for the 8th Circuit in *Vaccaro v. United States,* 449 F.2d 735, 736 (8th Cir. 1971), the finding of the District Court was found not to be clearly erroneous and was affirmed. It was there observed by Judge Gibson:

> "However, in view of the apparent injustice imposed on Vaccaro by the civil disability enactment, we feel a brief comment is in order.

> This is an appealing case for relief since appellant was only 19 years old at the time of this offense and in view of his clean record since that time, the lifetime attainder imposed by the City appears to be out of all proportion to this 1934 offense, and could well present constitutional questions. However, the constitutional issue of the validity of the lifetime civil disability is not before us in this case, and on the record we feel Judge Hunter's findings must be affirmed."

The Director thereafter denied Vaccaro's application for renewal of the Employee Liquor Permit asserting that he was ineligible for a permit by virtue of Article V, Section 4.35 of the Alcoholic Beverage Control Ordinance, and Section 311.060, RSMo 1969. Article V relates to "Qualification of Licensee." Section 4.35 provides that "licensees" must be of good moral character and qualified to hold an alcoholic beverage license in the State of Missouri. Chapter

311, RSMo 1969 is the Liquor Control Law. Section 311.060 provides ". . . and no person shall be granted a license or permit hereunder . . . who has been convicted, since the ratification of the twenty first amendment to the Constitution of the United States, of a violation of the provisions of any law applicable to the manufacture or sale of intoxicating liquor . . .." Vaccaro's conviction in 1934 was, of course, subsequent to the adoption of the Twenty First Amendment.

Other portions of the Alcoholic Beverage Control Ordinance are also pertinent here.[1]

Article I—DEFINITIONS, Section 4.1(k) defines "Licensee" as "The holder of all licenses issued under the provisions of this chapter." Section 4.1(p) defines "Permittee" as "The holder of an employee's permit issued under the provisions of this chapter."

Article II—DUTIES AND POWERS OF DIRECTOR, consists of Sections 4.2 through 4.10. Section 4.7 relates to the suspension or revocation of licenses or permits and provides for the hearing procedure before the Director of Liquor Control.

Article III—LICENSES, provides for the requirement of a license and unlawful acts concerning licenses.

Article IV—CLASSIFICATION OF LICENSES, consists of Sections 4.13 through 4.34 and details the various kinds of licenses to be issued and establishes the license fees for them.

Article V—QUALIFICATION OF LICENSEE, contains Section 4.35 relied upon by the Director and providing that "No license provided for by this chapter shall be issued to any individual . . . [unless such person] . . . is qualified to hold an alcoholic beverage license in the State of Missouri . . .."

Article VI—EMPLOYEE'S PERMIT, contains the qualifications for such permits and in Section 4.38(a) requires only that all persons employed in the retail sale of alcoholic beverages "be twenty-one (21) years of age or older and must obtain a permit to do so from the director of liquor control,

. . .." Section 4.38(b) provides that: . . . if the applicant meets the applicable requirements of the city and state, then such applicant will be given a permit . . .." It must be noted that a "permit" is not within the definition of "license" under Article III, nor is it classified as a "license" under Article IV, nor is it referred to in Article V providing for qualifications of licensees. Article VII—APPLICATION FOR LICENSES, Article VIII—ISSUANCE OR ORIGINAL LICENSE, and Article IX—RENEWALS, TRANSFERS, LOST LICENSES AND CHANGES IN LICENSES do not make any further reference to "Employee's Permits."

Article XIV—LIQUOR CONTROL BOARD OF REVIEW, Section 4.79 provides, "If an application for any license or permit is denied by the director of liquor control, . . . the applicant, licensee or permittee, as the case may be, may request, in writing, a review of such denial or decision touching location, suspension or revocation of a license or permit to the board of review, . . .." Section 4.82 requires the board of review to "investigate, examine and review the denial of an application for a license or permit" by the director of liquor control. It is there stated that: "The board of review may set aside any of the above actions of the director of liquor control if the majority of the members of the board determines that any such act should be altered, and the board may order the director of liquor control to issue a license or permit . . .."

The Alcoholic Beverage Control Ordinance has thus placed a broad and exclusive discretion in the Liquor Control Board of Review rather than in the Director of Liquor Control. This is similar to the broad discretion granted to the State Supervisor of Liquor Control under Chapter 311, RSMo 1969. See *Kehr v. Garrett,* 512 S.W.2d 186 (Mo.App.1974). This discretion may also be similar to that of the Board of Zoning Appeals under an ordinance allowing that board to modify application of the zoning

---

1. All references are to Kansas City, Mo. Code of General Ordinances, ch. 4 (1967).

ordinance in case of hardship as indicated in the case of *State ex rel. Nigro v. Kansas City,* 325 Mo. 95, 27 S.W.2d 1030 (Banc 1930). As to matters within the State Liquor Control law, Section 311.700, RSMo 1969, provides for judicial review of the supervisor's action. However, the Alcoholic Beverage Control Ordinance does not make any provision for judicial review of the actions of the Liquor Control Board of Review.

Subsequent to the Director's refusal of a permit, Vaccaro duly appealed that decision to the respondent members of the Liquor Control Board of Review. After hearing, that Board reversed the Director's decision. The Director and the City of Kansas City thereupon filed their petition for review in the circuit court pursuant to the provisions of Chapter 536, RSMo 1969, the "Administrative Procedure and Review Act." The petition alleged that the Board's decision was arbitrary and contrary to Section 4.35(3) of the Ordinance and Section 311.-060, RSMo 1969. The defendants' answer asserted that the plaintiffs City of Kansas City and the Director were without sufficient standing and had no legal ground to file a petition for review of the actions of the Liquor Control Board of Review. Defendants further stated that the Board's action was in full compliance with the law and that the plaintiffs' petition failed to state a claim upon which relief could be granted. Although the Board's order reversing the Director's denial of the permit is not set forth in either the transcript of the proceedings before the Board or in the transcript in the circuit court, the memorandum opinion filed by the trial court refers to that order and indicates the conclusion of the Board that it was estopped to deny Vaccaro a license because licenses had been issued to him for twenty years, and it would then be an undue burden and hardship on a sixty-year-old man whose lifetime job had been in the liquor business to lose such a permit. The trial court's memorandum opinion concluded that the City could not be estopped and that the imposition of an apparent lifetime civil disability did not involve a denial of due process. Upon that

conclusion, the trial court found the issues in favor of the Director, reversed the Liquor Control Board of Review's decision and reinstated the Director's decision of refusal.

On this appeal, appellants Vaccaro and the members of the Liquor Control Board of Review raised two points. First, that the trial court erred in ruling that the City was not estopped from enforcing its Ordinance in the particular fact situation here, citing *Murrell v. Wolff,* 408 S.W.2d 842 (Mo.1966), and *Mora v. Hastings,* 416 S.W.2d 642 (Mo.App.1967). Second, that the trial court erred in ruling that the statute and Ordinance were not an unreasonable denial of substantive due process as applied to Vaccaro's right to life, liberty, and the pursuit of happiness, citing *Schware v. Board of Bar Examiners,* 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957), and *DiCarlo v. State Liquor Authority of New York,* 54 Misc.2d 482, 282 N.Y.S.2d 834 (1967), modified, 29 A.D.2d 757, 287 N.Y. S.2d 960 (1968).

■ However, those issues need not be determined here inasmuch as a threshold question of jurisdiction is presented. As will be seen, the Director of Liquor and Amusement Control and the City of Kansas City had no standing to appeal the decision of the Liquor Control Board of Review. "Only a person with a 'legal standing' can resort to the courts for relief from action of an administrative agency . . .. The question of a person's legal standing to apply for judicial relief does not touch the merits of a suit, but merely the authority of the court resorted to to entertain the action." 2 Am.Jur.2d *Administrative Law* § 575, at 393 (1962); *State ex rel. Rouveyrol v. Donnelly,* 285 S.W.2d 669 (Mo. banc 1956). "[W]here judicial tribunals have no jurisdiction to act, their proceedings are absolutely void." *Randles v. Schaffner,* 485 S.W.2d 1, 2 (Mo.1972); *Lafayette Federal Savings and Loan Association of Greater St. Louis v. Koontz,* 516 S.W.2d 502 (Mo. App.1974); *Bash v. Truman,* 335 Mo. 1077, 75 S.W.2d 840 (1934). We are required to examine this jurisdictional problem sua

sponte. *Martin v. Martin,* 534 S.W.2d 621, 625 (Mo.App.1976); *American Hog Company v. County of Clinton,* 495 S.W.2d 123, 125 (Mo.App.1973). As stated in 5B C.J.S. *Appeal and Error* § 1891, at 352–353 (1958): "A judgment rendered without jurisdiction or authority must ordinarily be reversed, regardless of the manner in which the higher court is informed of the lack of jurisdiction. A reversal must follow where the record plainly shows a lack of jurisdiction . . . and an appellate court may of its own motion reverse a judgment or order rendered without jurisdiction."

 Article V, Section 22 of the Constitution of Missouri establishes the right to judicial review of administrative decisions. The legislature has power to formulate the conditions under which resort to the courts may be had and the persons accorded the right to obtain a review of administrative decisions are to be ascertained from the terms of the statute. Generally in the absence of express statutory authority, no appeal or other review of administrative action is provided for political subdivisions of the state. *State ex rel. St. Francois C.S.D. R–III v. Lalumondier,* 518 S.W.2d 638 (Mo. 1975). "An administrative agency is not a party to a litigation as that term is customarily used and should not be so considered unless the legislature has so provided." *State ex rel. Rouveyrol v. Donnelly, supra* at 677. Thus, for example, certain "administrative agencies aggrieved by final decision of the Administrative Hearing Commission" are expressly given the right of judicial review by Section 161.332, RSMo 1969. Similarly, the Director of Employment Security has been given authority to seek judicial review of the decisions of the Industrial Commission under Section 288.-210, RSMo 1969. Even courts of general jurisdiction are limited as to such appeals by the statutory powers granted. *Randles v. Schaffner, supra.*

In the instant case, the Alcoholic Beverage Control Ordinance does not provide generally for judicial review of the decisions of the Liquor Control Board of Review; and it does not provide specifically for the Director to seek such review. If the respondents have any standing then it must be under the provisions of Supreme Court Rule 100, "Administrative Review," and Chapter 536, RSMo 1969, "Administrative Procedure and Review." See *State ex rel. State Tax Commission v. Luten,* 459 S.W.2d 375, 378 (Mo. banc 1970). Rule 100.03 and Section 536.100 are substantially the same. The Rule provides: "Any person who has exhausted all administrative remedies provided by law and who is aggrieved by a final decision in a contested case, whether such a decision is affirmative or negative in form, shall be entitled to judicial review thereof, as provided in Rules 100.04 to 100.-08, unless some other provision for judicial review is provided by statute; . . .."

The recent case of *Kostman v. Pine Lawn Bank and Trust Company,* 540 S.W.2d 72 (Mo. banc 1976), made a comprehensive and careful examination of whether an administrative officer had "standing" as a "person aggrieved" to seek review of the reversal by an administrative board of appeals of the officer's own determination. In *Kostman,* the Commissioner of Finance of Missouri attempted to appeal the decision of the Missouri State Banking Board which had reversed the Commissioner's determination upon a bank application. As in this case, the Commissioner purported to act under Section 536.100 and Rule 100.03 in seeking judicial review of the Board's decision.

In *Kostman,* the court observed that the statute (Sec. 361.094, RSMo 1969) imposed no restraint or limitation on the scope of the Banking Board's review of matters coming before it on appeal from actions or refusals taken by the Commissioner. Similarly, in this case, the ordinance (Chapter 4, Article XIV, Sec. 4.82, *supra* ) imposed no restraint or limitation on the scope of the Liquor Control Board of Review's review of matters coming before it on appeal from actions or refusals taken by the Director of Liquor Control.

It is noted in *Kostman* that ". . . the Commissioner is subordinate to the State Banking Board and it is the superior

authority." 540 S.W.2d at 75. It is further observed that ". . . the legislature in its wisdom obviously saw fit to make the State Banking Board . . . composed of five members with variable backgrounds and political allegiances . . . ultimate guardian of the public's interest at the administrative level as opposed to a single individual such as the Commissioner." 540 S.W.2d at 76. The opinion asserts, "A virtually unlimited number of persuasive arguments can be marshaled to support the sagacity of the general assembly in withholding authority from the Commissioner of Finance to affirmatively invoke judicial review of decisions of the State Banking Board at any level of the judicial process." 540 S.W.2d at 76.

Under the provisions of the Alcoholic Beverage Control Ordinance, the City has apparently constituted the Liquor Control Board of Review composed of three members of variable backgrounds as the ultimate guardian of the public's interest at the administrative level as opposed to a single individual such as the Director.

The Supreme Court further states in Kostman, "In clear and direct language the legislature appears to have spelled out two conditions precedent that must be met before a person has a right to place his grievance from an administrative decision into the stream of judicial review: (1) he must have exhausted all administrative remedies provided by law and (2) he must have been aggrieved by a final administrative decision. The former presupposes him to be a person who possessed some administrative remedy. What administrative remedy did the Commissioner possess to exhaust? The obvious answer is none. It is beyond logical comprehension to envision the Commissioner appealing his own decision or refusal to the State Banking Board. Under Section 536.100, supra, the Commissioner had no right to invoke judicial review of the State Banking Board's decision at the circuit court level in the first instance, and this legal inability to do so stays with him throughout, even on appeal, since an appeal from the circuit court to the appellate court level is but the final step in the overall process of judicial review of decisions of administrative tribunals." 540 S.W.2d at 75–76.

The foregoing language is precisely in point to the situation presented in this case. The Director of Liquor and Amusement Control had no administrative remedies to exhaust and obviously would not have appealed his own determination to the Board of Liquor Control Review. The Director's right to invoke judicial review would be no different than that of the Commissioner in Kostman. It is further pointed out in Kostman that no official act of the Commissioner was involved in the appeal inasmuch as the Commissioner's determination had been reversed by the Banking Board and had become a nullity ab initio. It is stated at 540 S.W.2d at 78: "By his appeal to this court the Commissioner seeks to upset the official act of the State Banking Board. He does not seek to uphold or vindicate the official act of the State Banking Board and no presently viable act on his own exists to be vindicated or upheld." That was precisely the Director's position in this case. By his appeal to the circuit court the director sought to upset the official act of the Liquor Control Review Board. He did not seek to uphold or vindicate that official act and at that time no presently viable act of the Director existed to be vindicated or upheld.

The opinion in Kostman also cited and relied upon the case of Mortensen v. Pyramid Savings and Loan Association of Milwaukee, 53 Wis.2d 81, 191 N.W.2d 730 (1971) and Minn. Bd. of Health v. Gov., etc., App. Bd., 304 Minn. 209, 230 N.W.2d 176 (1975). In Mortensen it was held that the Commissioner of Savings and Loan in Wisconsin was not an "aggrieved party" so as to seek judicial review of a decision of the Savings and Loan Review Board which had reversed the Commissioner's decision. It was there stated: "An administrative officer is not a party for the purposes of seeking a review of a reversal of his determination by a board of appeals. See 2 Am.Jur., Administrative Law, p. 177, sec. 368. It is

stated in 2 Am.Jur., Administrative Law, p. 397, sec. 576 'An administrative officer who made an original decision which was appealed to a higher administrative authority was held to have no interest as a party which would entitle him to appeal from the overruling of his decision.' To the same effect is 73 C.J.S. Public Administrative Bodies and Procedure § 159, p. 497; *Dept. of Labor v. Unemployment Comp. Bd. of Rev.* (1949), 362 Pa. 342, 67 A.2d 114. Unless the statute expressly so provides, an aggrieved party is one outside the decisional process who is directly affected." 191 N.W.2d at 731.

In *Minn. Bd. of Health v. Gov., etc., supra,* the issue was whether the State Board of Health was a "person aggrieved" so as to seek judicial review of a decision of the Certificate of Need Appeal Board which reversed the decision of the Board of Health. The Minnesota Supreme Court held that the Minnesota Board of Health was not a "person aggrieved" so as to have standing to seek judicial review, quoting *Mortensen, supra.*

The court in *Kostman* concluded ". . . that the commissioner of finance is not a person aggrieved by a decision of the banking board and therefore does not have standing to seek judicial review of the banking board's decision." 540 S.W.2d at 81.

Other decisions in the state have come to the same determination. In *State ex rel. Rouveyrol v. Donnelly, supra,* it was held that the Commissioner of Finance under the then existing statute had no "standing" to invoke a judicial review of a decision of the Board of Bank Appeals. It was asserted that the holding was in accord with the weight of authority with respect to the right of a public officer or a board to appeal in the absence of statutory provision.

In the case of *State ex rel. St. Francois C.S.D. R–III v. Lalumondier, supra,* it was held that no appeal or review was provided for political subdivisions of the state in regard to alleged underassessments by a County Board of Equalization in the absence of express statutory authorization.

In *Hertz Corp. v. State Tax Commission,* 528 S.W.2d 952 (Mo. banc 1975), the City of St. Louis sought judicial review of the action of the St. Louis County Assessor as affirmed by the St. Louis County Board of Equalization, State Tax Commission, and the St. Louis County Circuit Court as to assessments against the City's tenants at Lambert St. Louis Municipal Airport. Although it was concluded that the City had an interest in the controversy, it was held that the City was not an "aggrieved party" within the meaning of Section 536.100 RSMo. Also see *In re Roadway in Section 21, Township 60, Range 6, West,* 357 S.W.2d 919 (Mo.1962), where a landowner was held not to have standing to appeal an order of the County Court closing a roadway.

In this case, the Director of Liquor Control and the City of Kansas City are not "aggrieved persons" by reason of the decision of the Liquor Control Board of Review and therefore do not have standing to seek judicial review of the decision of the Liquor Control Board. Since the Circuit Court did not have jurisdiction, its judgment is reversed, and the determination of the Liquor Control Board of Review is reinstated.

All concur.