Gerald H. GOLDBERG, Director of
Revenue, Appellant,

v.

STATE TAX COMMISSION of
Missouri, Respondent,

and

A. P. Green Refractories Company,
Intervenor-Cross-Appellant.

No. 62424.

Supreme Court of Missouri,
Division No. 1.

July 14, 1981.

Owen T. Armstrong and Thomas F. Schlafly, St. Louis, for respondent.

ROBERT R. WELBORN, Special Commissioner.

The Director of Revenue assessed additional income tax against A. P. Green Export Company for the years 1971, 1972 and 1973. Taxpayer appealed to State Tax Commission which sustained the Director in part and found for taxpayer in part. Director appealed to circuit court, where order of State Tax Commission was affirmed. Director appealed to this Court from that portion of judgment adverse to him. A. P. Green Refractories, parent corporation of taxpayer which had been dissolved, intervened and filed cross-appeal from that portion of judgment adverse to taxpayer.

This case involves the construction and application of the Multistate Tax Compact, Section 32.200, RSMo 1978. As recited in Article I of the compact, its purpose is to "[f]acilitate proper determination of state and local tax liability of multistate taxpayers" and "[a]void duplicative taxation." The issues revolve around the procedure for apportionment of the taxpayer's income under Article IV of the compact.

Paragraph 9 of Article IV provides:

"9. All business income shall be apportioned to this state by multiplying the income by a fraction, the numerator of which is the property factor plus the payroll factor plus the sales factor, and the denominator of which is three."

Paragraph 10 of Article IV provides:

"10. The property factor is a fraction, the numerator of which is the average value of the taxpayer's real and tangible personal property owned or rented and used in this state during the tax period and the denominator of which is the average value of all the taxpayer's real and tangible personal property owned or rented and used during the tax period."

Paragraph 13 of Article IV provides:

"13. The payroll factor is a fraction, the numerator of which is the total

Richard Wieler, Asst. Atty. Gen., Jefferson City, for appellant.

amount paid in this state during the tax period by the taxpayer for compensation and the denominator of which is the total compensation paid everywhere during the tax period."

Paragraph 15 of Article IV provides:

"15. The sales factor is a fraction, the numerator of which is the total sales of the taxpayer in this state during the tax period, and the denominator of which is the total sales of the taxpayer everywhere during the tax period."

Paragraph 16 of Article IV provides:

"16. Sales of tangible personal property are in this state if:

"(1) the property is delivered or shipped to a purchaser, other than the United States government, within this state regardless of the f.o.b. point or other conditions of the sale; or

"(2) the property is shipped from an office, store, warehouse, factory, or other place of storage in this state; and

"(a) the purchaser is the United States government; or

"(b) the taxpayer is not taxable in the state of the purchaser."

Paragraph 18 of Article IV provides:

"18. If the allocation and apportionment provisions of this article do not fairly represent the extent of the taxpayer's business activity in this state, the taxpayer may petition for or the tax administrator may require, in respect to all or any part of the taxpayer's business activity, if reasonable:

"(1) separate accounting;

"(2) the exclusion of any one or more of the factors;

"(3) the inclusion of one or more additional factors which will fairly represent the taxpayer's business activity in this state; or

"(4) the employment of any other method to effectuate an equitable allocation and apportionment of the taxpayer's income."

For the years in question, Export was in the business of selling products of its parent corporation, A. P. Green Refractories Company, in some 30 foreign countries in the Western Hemisphere and in Puerto Rico. With the exception of Puerto Rico, where Export maintained a local sales office and staffed it with a full-time employee as resident manager, Export apparently conducted no activity in such countries and relied there upon independent contractors.

Export, according to its petition for review before the State Tax Commission, is a Missouri corporation, with offices in Mexico, Missouri, at the offices of Refractories. Products sold by Export are shipped from Refractories' manufacturing plants to seaports, where they are trans-shipped to the purchasers at foreign destinations. During the years in question the shipments from Refractories originated in Missouri in approximately two thirds of Export's sales. The remaining one third originated from Refractories' plants outside Missouri.

In its 1971, 1972 and 1973 income tax returns, Export apportioned its income to Missouri under the above quoted compact provisions on the basis of a fraction which involved a zero for both the property and sales factors. Upon an audit of the returns, the Department of Revenue concluded that all of Export's sales should have been considered sales in Missouri and that the property factor should be excluded in the apportionment of the taxpayer's income taxable by this state.

Export petitioned the Director for an abatement of the added tax assessed on the basis of the audit. After a hearing, the Director found that the two thirds of Export's sales which were of products shipped from Refractories' Missouri plants should be considered as Missouri sales for purpose of apportionment of Export's income. The elimination of the property factor was upheld. On May 6, 1976, the Director issued his final decision, assessing an additional tax of $5,097.55, plus interest of $1,223.41 for 1971, $6,062.75, plus interest of $1,091.30

for 1972, and $4,193.55, plus interest of $503.23 for 1973.

Export appealed to the State Tax Commission. After a hearing, that body found that the Director of Revenue did not err in eliminating the property factor in computation of the apportionment fraction, but that none of Export's sales were made in Missouri within the meaning of the compact.

The Director filed a petition of review of the Commission's order in the Cole County Circuit Court. The court affirmed the decision of the Commission. The Director filed notice of appeal to this Court. Refractories, as successor of Export, was permitted to intervene and file a cross-appeal.

Before considering the merits of the Director's appeal, the question of his standing to seek review of the Commission's order in the circuit court must be dealt with, respondent here contending that the Director lacked standing to appeal and therefore the circuit court had no jurisdiction of the subject matter of the appeal before it.

Appellant's objection is premised upon the decisions in *Kostman v. Pine Lawn Bank & Trust Co.*, 540 S.W.2d 72 (Mo. banc 1976), and *Kansas City v. Reed*, 546 S.W.2d 727 (Mo.App.1977). In *Kostman*, the court held that the Commissioner of Finance had no authority to appeal to the circuit court from a decision of the State Banking Board. In *Reed*, the court held that neither the city nor its Director of Liquor Control could obtain judicial review of a decision of the city's Liquor Control Board.

In this case, as in the cases relied upon by respondent, there was no statute expressly authorizing the Director to appeal the decision of the Tax Commission. If such right exists, it must be found in the general administrative procedure provision giving the right of judicial review to a "* * * person who has exhausted all administrative remedies provided by law and who is aggrieved by a final decision in a contested case." Rule 100.03.

There is language in the opinion of the court of appeals, which was adopted by the Supreme Court in *Kostman*, which would appear to limit the right of judicial review to a person who had a right to prior administrative determination. The court noted that, since the Finance Commissioner could not have appealed his own decision, he possessed no administrative remedy and therefore had no right to invoke judicial review of the Banking Board's decision. 540 S.W.2d 76. Respondent here seizes upon that language and contends that the position of the Director is the same as that of the Commissioner of Finance in *Kostman* —the Director could not appeal his own decision to the Tax Commission, and, therefore, he has no standing to seek judicial review of the Commission's decision.

Despite the language of *Kostman* in this regard, the fundamental disqualification of the Commissioner there found was based upon the exhaustively considered question of whether or not that official was an "aggrieved" party, a condition to the right of judicial review under Rule 100.03, and a condition to the right, under Section 512.020, RSMo 1978, to appeal the judicial determination. The requirement that administrative remedies be exhausted before judicial review may be sought is merely an expression of the firmly established rule of administrative law. 2 Am.Jur.2d Administrative Law, p. 426 et seq. (1962). The administrative remedy had been exhausted in this case. The right to seek judicial review was not dependent upon *who* sought the administrative relief. The determinative question is whether the Director was an "aggrieved" person.

An authoritative distillation of the controlling rules is found in Fuchs, "Prerequisites to Judicial Review of Administrative Agency Action," 51 Ind. Law Journal 817, 939:

"If an agency's action has been superseded by the action of a reviewing administrative authority charged with serving the same ends, the officer or agency that took the initial action is likely to be without standing in court either to challenge

or to support the decision on review. If, by contrast, the initial and reviewing authorities are considered to be differently oriented and are not in the relation of subordinate to superior, a statutory basis for standing by the initial authority to seek review and prosecute appeals may well exist."

The cases relied upon by respondent are good examples of the application of the first of these rules. In *Kostman*, the court noted that "* * * the State Banking Board may substitute its own discretion and judgment in determining the facts in light of the applicable law and override any prior determination made by the Commissioner," (540 S.W.2d 75) that the relationship between the two was that of "subordinate" and "superior authority." 540 S.W.2d 76. In *Reed*, the court noted that the ordinance there involved "imposed no restraint or limitation on the scope of the Liquor Control Board of Review's review of matters coming before it on appeal from actions or refusals taken by the Director of Liquor Control" (546 S.W.2d 731) and that the ordinance had "* * * constituted the Liquor Control Board of Review * * * as the ultimate guardian of the public's interest at the administrative level * * *." 546 S.W.2d 732.

■ In contrast with the situation in those cases, the Director of Revenue is a constitutional officer, the head of the department charged with the collection of all taxes and fees payable to the state. Mo. Const. Art. IV, § 22. The State Tax Commission is the agency required by Section 14 of Article X of the Constitution of Missouri, to equalize assessments as between counties and to hear appeals from local boards. The review of decisions of the Director of Revenue was among the "other duties" permitted to be required of the Commission. The Commission was authorized to modify or reverse any decision of the Director which was found to be "unlawful, unfair, improper, arbitrary or capricious." § 138.430 1., RSMo 1969, now repealed, Laws of 1978, p.

443. (Appeals from the Director now go to the Administrative Hearing Commission, with a right of judicial review expressly granted "either party." § 161.273, RSMo 1978.) The only qualification for members of the State Tax Commission is that they be "qualified voters and taxpayers and residents of this state for at least five years * * *." § 138.200, RSMo 1978. It is inconceivable that the General Assembly intended to grant such agency the power to render final, unappealable decisions involving technical, complicated questions of proper construction and application of the tax laws. Although they were authorized to overturn decisions of the Director, the Commission's relationship to that officer was not that of superior to subordinate. The Director was charged with the constitutional duty to collect the taxes due the state. The Tax Commission's primary and constitutional responsibility is in the area of assessment of property for local taxation. Review of the decisions of the Director of Revenue was an incidental duty imposed by the legislature on the Commission. No general overriding authority over the Director was given the Commission. The situation of the Director is far different from that of the Commissioner of Finance or the Kansas City Liquor Director.

As the official charged with the duty of collecting the tax here in issue, the Director had an interest and standing which would make him a party "aggrieved" by a Tax Commission ruling contrary to the Director's position. See *In Re Halifax Paper Company, Inc.*, 259 N.C. 589, 131 S.E.2d 441 (1963). The reasoning of that case is here convincing and supports the conclusion that the Director did have standing to appeal from the decision of the State Tax Commission.

On the merits of the Director's appeal, the position of the taxpayer is that the sales by Export were not Missouri sales within the meaning of paragraph 16 of Article IV of the compact because the goods involved which were sold by Refractories to Export

were shipped from Refractories' Missouri plants for delivery to Export outside the State of Missouri, the title to the goods not passing to Export until their delivery at an outstate destination. The basic finding of the Tax Commission was that "* * * none of the products sold by [Export] represented property shipped by [Export] from any office, store, warehouse, factory or other place of business maintained by [Export] in the State of Missouri."

Appellant's position is that the place of passage of title is irrelevant in the application of paragraph 16; that the purpose of that provision and of the compact as a whole is to assure that 100% of the income of a multistate corporation is subject to tax; and that the sales here in question are to be "thrownback" to Missouri under the plain language of paragraph 16(2), there having been no showing that Export was taxable in any other jurisdiction within the meaning of the compact. With respect to the latter element, there is no contention that Export was "taxable in the state of the purchaser" except with respect to sales in Puerto Rico, which will be dealt with later.

■ Respondent, of course, emphasizes the findings of the State Tax Commission. Those findings are based upon generally uncontroverted evidence and do not involve the exercise of administrative discretion by the Commission. The question presented involves the application of the law to the facts and the findings of the Commission are not conclusive. Rule 100.07(c). The ultimate conclusion of the Commission was that the sales in question could have been sales in Missouri only if the sales from Refractories to Export had been completed in Missouri. This is, of course, basically a question of law, not a finding to which deference is due.

■ The conclusion of the Commission does track the language of paragraph 16(2) in finding that the sales of Export are not "* * * shipped from an office, store, warehouse or other place of storage in this

state." However, the finding does interpolate the language "by Complainant (Export)" after the words "shipped" and "storage" in the statutory language. Paragraph 16(2) does not require that the *taxpayer* ship the goods from the *taxpayer's* place of storage in Missouri. It requires only that the goods be shipped from a place of storage in this state. Paragraph 16(2) makes no requirement that title to the goods be in the taxpayer before their shipment from this state. If the taxpayer is subject to the taxing jurisdiction of the state from which the property is shipped (and there is no question that Export was subject to the jurisdiction of Missouri for income tax purposes) and the purchaser is the United States government or, the alternative here applicable, the taxpayer is not taxable in the state of the purchaser, the sale is allocated to state from which the property is shipped.

■ This is the essence of the "throwback" rule embodied in paragraph 16 of the compact in order to avoid the use of devices subject to taxpayer manipulation, such as passage of title, to allocate income from multistate operations for the purpose of tax avoidance. This case provides a good example of the problems which produced the compact and its solution for the allocation of income for purposes of state taxation of multistate business activity. Export's Missouri returns allocated approximately 20% of Export's income to Missouri. Export would not be subject to taxation elsewhere on the remaining 80% of its income. Missouri is the site of Export's operation which results in tax liability and the "throwback" rule produces an allocation of income to this state which Export activity here warrants.

In *GTE Automatic Electric, Inc. v. Allphin*, 68 Ill.2d 326, 369 N.E.2d 841, the court considered the Illinois enactment similar to paragraph 16. A major part of the court's opinion dealt with sales by GTE of goods shipped by GTE's suppliers from states in which GTE was not taxable to states in which GTE was not taxable. However, the

court also dealt with sales by GTE which were shipped by GTE's suppliers from their Illinois inventory to purchasers in states where GTE was not taxable. The court held that such latter transactions were "squarely within the language * * *'" of the Illinois statute identical with paragraph 16(2) of the compact. See Hellerstein, "Construing the Uniform Division of Income for Tax Purposes Act: Reflections on the Illinois Supreme Court's Reading of the 'Throwback' Rule." 45 University of Chicago Law Review, 768, 782, fn. 71 (1978).

The State Tax Commission in this case failed to apply the plain language of paragraph 16(2) in holding that sales by Export of goods shipped from Refractories' plants in Missouri were not sales in this state.

The Tax Commission's conclusion was based, in part, upon the finding that, on Refractories' Missouri income tax return, the transactions with Export had been recorded as partly within and partly without Missouri and that such allocation of Refractories' sales had been accepted by the Department of Revenue. The only basis for this finding is a statement of counsel at the hearing before the Commission. The tax returns of Refractories are in the record but they show no separate treatment of sales to Export and provide no evidentiary basis for counsel's statement.

However, even if the tax commission's finding is accepted, it provides no basis for the commission's ultimate conclusion. The question involves one of income, not sales, tax. The sales factor is looked at to assist in the apportionment to Missouri of its proper share of Export's income for tax purposes. Refractories did not employ the apportionment process under the compact, but relied on the single factor formula under Section 143.451, RSMo 1978. Under that statute, the Missouri income tax is computed on the basis of a fraction arrived at by dividing the total receipts from transactions in Missouri and one half of receipts from transactions partly in Missouri and partly outside the state by total amount of

business transacted. In this case, the question is the proper application of the provisions of paragraph 16 of the compact in specifying what sales of tangible personal property are in this state. How the taxpayer's vendor treats its transactions with the taxpayer does not determine the meaning and effect of paragraph 16. It is to be applied according to its terms.

Respondent asserts that, in any event, Export's Puerto Rico sales should not be thrown back to Missouri because its activity in Puerto Rico was sufficient to provide jurisdiction for the levying of an income tax against Export. Respondent relies upon paragraph 16(2)(b) as providing for "throwback" only if the taxpayer is not taxable in the state of the purchaser. Taxability, according to respondent, is determined under paragraph 3 of Article IV, and particularly, in this case, subparagraph (2) of that section, as follows:

"3. For purposes of allocation and apportionment of income under this article, a taxpayer is taxable in another state if

\*     \*     \*     \*     \*     \*

"(2) that state has jurisdiction to subject the taxpayer to a net income tax regardless of whether, in fact, the state does or does not."

According to the evidence before the Commission, Export maintained a sales office in Puerto Rico, staffed by a full-time employee with authority to accept orders on Export's behalf. Although Puerto Rico imposed an income tax, Export, on advice of counsel that it was not required to do so, filed no income tax return and paid no income tax there.

■ Respondent's position that taxability for purposes of paragraph 16(2)(b) is to be determined under paragraph 3 is supported by authority. *Scott & Williams, Inc. v. Board of Taxation*, 117 N.H. 189, 372 A.2d 1305, 1309[4] (1977). By Public Law 86–272, 15 U.S.C. § 381, Congress has denied jurisdiction to a state for income tax pur-

poses where the business activity in the state is limited to the solicitation of orders there, which are subject to approval or rejection outside the state and are filled by shipment from outside the state. The maintenance by Export of a sales office in Puerto Rico goes beyond the minimum activity specified in the federal law and would afford jurisdiction for the imposition of an income tax there. See *Jantzen, Inc. v. District of Columbia*, 395 A.2d 29 (D.C.App. 1978).

In view of the test of jurisdiction to tax, specified by paragraph 3(2) of Article IV, nonpayment of a Puerto Rico tax by Export did not render Export "not taxable" in Puerto Rico for purpose of paragraph 16(2)(b). Therefore, the Puerto Rico sales were not subject to the "throwback" provision of paragraph 16.

A cross-appeal has been filed in this Court by A. P. Green Refractories Company as successor to Export. The cross-appeal attacks the Director's exclusion of the property factor in calculating the proportion of Export's income taxable in Missouri. The appellant Director has asserted a procedural objection to the cross-appeal. His contention is that neither Export nor Refractories appealed to the circuit court from the Commission's affirmance of the Director's exclusion of the property factor and therefore the circuit court lacked jurisdiction over the subject matter of the claim now the subject of the cross-appeal.

The response is that the Director's petition for review brought up the entire record, that the exclusion of the property factor was briefed and argued by both parties in the circuit court, and that the parties' and the court's treatment of Refractories' position was tantamount to express permission to intervene, authorized by Rule 100.-04(c), with the subsequent post-judgment permission of intervention by Refractories merely ratifying and conferring the status of the taxpayer as a party to the case.

The record filed in this Court reveals only that the Director filed his petition for re-

view on January 26, 1979, within the 30-day period allowed by Rule 100.03 of the Tax Commission's order. The petition for review specifically attacked the Commission's ruling on the sales allocation and sought reversal of the order in that regard. Nothing was filed on behalf of the taxpayer until an entry of appearance by counsel on March 5, 1979. The next entry is a general judgment, dated July 3, 1980, affirming the order of the Commission. On August 15, 1980, the court entered an order permitting Refractories, as successor to Export, to intervene in the cause for purpose of filing a cross-appeal. On the same date, Refractories filed its notice of cross-appeal, specifying that it was appealing from that portion of the trial court's judgment which affirmed the final order of the Tax Commission on the property factor exclusion issue, the notice specifying that the taxpayer "was treated as a *de facto* party to the case by way of intervention as authorized by Rule 100.04(c)."

Cross-appellant's reliance upon its status as a party to the proceeding in the circuit court ignores the question of what, if any, duty it had as a party if it wished to seek relief in the circuit court from that portion of the Commission's order, adverse to it. The general rule of appellate procedure is that, in the absence of a cross-appeal, the reviewing court is concerned only with the complaint of the party appealing and that the opposing party who filed no appeal will not be heard to complain of any portion of the trial court's judgment adverse to him. *Jenkins v. Meyer*, 380 S.W.2d 315, 323[17] (Mo.1964).

This rule was applied with regard to judicial review of administrative action in *United States v. Lies*, 170 U.S. 628, 18 S.Ct. 780, 42 L.Ed. 1170 (1898). In that case, tobacco importers, dissatisfied with the classification for tariff purposes of tobacco imported by them, appealed the decision of the collector to a board of appraisers, as authorized by law. The board generally found in favor of the government, but a portion of the

protest was sustained. The statutory provision for judicial review required a party dissatisfied with the board's decision to file an application for review in the circuit court, setting out a concise statement of errors of law and fact complained of. The review was on the record before the board, with a right given to present additional evidence on request. The importer filed the necessary notice in the circuit court, but subsequently dismissed the appeal. The government insisted that the court should review the decision of the board insofar as it was favorable to the importer. The court refused, holding that a party dissatisfied with the board's decision was required to apply for review within 30 days of the decision, otherwise his remedy in the court was lost. *United States v. Lies*, 74 F.2d 546 (2d Cir., 1896).

The Supreme Court affirmed the circuit court decision, stating: "The fact that one party appeals furnishes no reason for holding that the other can obtain all the benefits of an appeal himself, without complying in any particular with the statute giving an appeal." 170 U.S. 634, 18 S.Ct. 780, 42 L.Ed. 1170.

Rule 100.04, relating to petitions for judicial review of administrative rulings, is not specific as to the matters required to be set out in the petition, as was the case with the statute in *Lies*. However, it has been held that a petition for review in Missouri practice does not authorize the reviewing court to undertake a review on any basis within the scope of permissible judicial review under Rule 100.07(b), but that the review is limited to issues properly raised by the petition for review. *Perez v. Webb*, 533 S.W.2d 650, 655–656[6] (Mo.App.1976).

■ Therefore, the mere fact that Refractories had been recognized as a party in the circuit court and that the entire record of the Tax Commission proceeding had been filed there did not entitle Refractories to attack that portion of the Commission's order, unfavorable to it. If Refractories wished to do so, it was incumbent upon it to undertake the jurisdictional prerequisite of petition for review, or, after the Director filed his petition, a cross-petition. Absent such action, the court had no jurisdiction to consider the taxpayer's complaint. *R. B. Industries, Inc. v. Goldberg*, 601 S.W.2d 5, 7[2] (Mo. banc 1980).

The taxpayer's assertion of its position with respect to its Puerto Rico sales, previously considered, stands on a different footing, inasmuch as in that instance, the taxpayer was endeavoring pro tanto, to sustain the order of the Commission.

On appeal of Director of Revenue, judgment reversed and cause remanded to the circuit court with directions to set aside the order of the State Tax Commission insofar as it reversed the Director's finding on the sales allocation issue and to remand the matter to the Director of Revenue for determination of the income tax payable for the years 1971, 1972 and 1973, in accordance with the views herein expressed.

The cross-appeal of taxpayer is dismissed.

Reversed and remanded. Cross-appeal dismissed.

PER CURIAM:

The foregoing opinion by ROBERT R. WELBORN, Special Commissioner is adopted as the opinion of the court.

MORGAN, P. J., DONNELLY, C. J., RENDLEN, J., FINCH, Senior Judge, and GUNN, Special Judge, concur.

BARDGETT, J., not participating.