In the Interest of E.S., M.D.S., and B.D.S., Minors.

R.S. and C.S., Appellants,

v.

**JUVENILE OFFICE OF COLE COUNTY, Respondent.**

No. WD 45304.

Missouri Court of Appeals, Western District.

March 16, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 27, 1993.

As Modified April 27, 1993.

Application to Transfer Denied May 25, 1993.

Michael J. Kuster, Jefferson City, for C.S. Edward Berg, Columbia, for R.S.

Grant W. Smith, Jefferson City, for Juvenile Office.

Thomas Sodergren, Jefferson City, for Guardian Ad Litem.

Before BERREY, P.J., and ULRICH and SMART, JJ.

BERREY, Judge.

RS, the natural mother, and CS, stepfather of ES and natural father of MDS and BDS, appeal the trial court's termination of their parental rights to all three children. They contend that the trial court lacked subject matter jurisdiction over the termination proceedings because the court never properly assumed jurisdiction over the matter. They further contend that the court erred in not dismissing the petition for termination because the state failed to meet its duty to provide reunification services and other services essential for the parents to maintain a relationship with the children. We reverse the termination based on the juvenile court's lack of jurisdiction over the matter.

On February 12, 1989, RS ("Mother") and CS ("Father") took ES, age 21 months, to the hospital because of bruising around her ear that Father had noticed. During the examination of ES, the doctor noticed multiple bruises on ES's head and body. The doctor notified authorities and the police department and the juvenile officer investigated the injuries.

Because of the suspicious nature of the injuries, ES remained at the hospital and, on February 13, 1989, the trial court entered an order placing ES in the temporary custody of the Division of Family Services ("DFS") pending completion of the investigation. On February 14, 1989, the juvenile officer filed a petition alleging that ES was a juvenile in need of care pursuant to §§ 210.110(1),[2] 210.110(4), and 211.031.-1(2)(d). Mother subsequently admitted that she inflicted the injuries upon ES.

On March 27, 1989, after Mother admitted injuring ES, MDS, age 10 months, was placed in the custody of the DFS. On March 29, 1989, the juvenile officer filed a petition alleging that extensive physical injuries had been sustained by MDS's sister, ES, and that their mother admitted inflicting those injuries. The petition prayed that the court make an "Order of Disposition in such manner as it shall find to be in the best interest of the juvenile and in the interest of the State." On April 20, 1989, a hearing was held concerning both ES and MDS after which the trial court directed that both children be made wards of the court and remain in the custody of the DFS for placement in an approved foster home.

On September 12, 1989, Mother pleaded guilty to the class C felony of abuse of a child for the bruises and injuries she inflicted upon ES. On September 19, 1989, BDS, age 18 days, was placed in the custody of the DFS for placement in an approved foster home. The juvenile officer filed a petition alleging the same circumstances as those alleged in MDS's case. The petition further alleged that Mother lacked parenting skills with regard to BDS in that she failed to provide adequate nourishment, clothing, and medical care. On February 6, 1990, a hearing was held concerning BDS during which counsel for Mother, counsel for Father, the Guardian ad Litem, and the juvenile officer stipulated that the Cole County Juvenile Court take jurisdiction over BDS. On February 9, 1990, the juvenile officer amended his petition as to BDS

2. Unless otherwise specified, all statutory references are to RSMo Cum.Supp.1992.

alleging that both Father and Mother lacked parenting skills.

On July 27, 1990, the trial court, by amended order, ordered that ES, MDS and BDS remain in the custody of the DFS for placement in an approved foster home pending further order of the court.

On February 27, 1991, the juvenile officer filed a petition for termination of Mother's parental rights as to all three children and Father's as to MDS and BDS. The natural father of ES relinquished his parental rights. After a hearing on the matter conducted on July 10 and 11, 1991, the trial court entered its findings of fact and conclusions of law terminating the parental rights of Mother and Father pursuant to § 211.447. As to jurisdiction, the trial court states as follows:

> That, notwithstanding any prior determination of jurisdiction, the Court has jurisdiction over the children pursuant to Section 211.031.1(1)(a), Section 211.447.2, and more particularly that the provisions of Section 211.447.2(2) RSMo.1986 have been met in that the Court finds that the children were abused or neglected by [Mother] and [Father]. . . .

The trial court found that [Mother] was indicted on the charge of the Class C felony of abuse of a child, to which she pleaded guilty and was sentenced to five years, which sentence was suspended. The trial court further found:

> pursuant to Section 211.447.2(3) that [ES], [MDS], and [BDS] have been under the jurisdiction of the Juvenile court of Cole County, Missouri for a period exceeding one year, said jurisdiction first being established as to [ES] on February 13, 1989, as to [MDS] on March 2[7], 1989, and as to [BDS] on September 18, 1989.

When the juvenile court may terminate parental rights and grounds for such termination are governed by § 211.447.2, which states in part:

> The juvenile court may terminate the rights of a parent to a child upon a petition filed by the juvenile officer . . . if it finds that the termination is in the best interests of the child and when it appears

by clear cogent and convincing evidence that *one or more* of the following grounds for termination exist:

> (1) The child has been abandoned.

.  .  .  .  .

> (2) The child *has been* adjudicated to have been abused or neglected.

.  .  .  .  .

> (3) The child has been under the jurisdiction of the juvenile court for a period of one year. . . .

(emphasis added).

There are no allegations that the children were abandoned. Therefore, in order to terminate the parental rights to these children, the trial court must have found that either the children had been adjudicated as abused or neglected or that they had been under the jurisdiction of the juvenile court for one year.

"Has been adjudicated" implies that the adjudication has occurred in the past. Bearing that in mind and reviewing the orders entered by the court prior to the termination hearing, we find the trial court never adjudicated that these children were abused or neglected. Although there are allegations of abuse stated by the juvenile officer, there is no adjudication of abuse or neglect made for any of the children prior to the termination order. We, therefore, find that the children had not been adjudicated to have been abused and neglected and termination of the parental rights of Mother and Father pursuant to § 211.447.-2(2) is improper.

Only one of the grounds for termination enumerated in § 211.447.2 is required to terminate parental rights. *M.C. v. D.C.*, 762 S.W.2d 476, 478 (Mo.App.1988). Therefore, pursuant to 211.447.2(3), if the children had been under the jurisdiction of the juvenile court for a period of one year prior to the termination proceeding, the court had jurisdiction over the matter and could properly determine the rights of the parents.

Because the trial court's orders concerning these children are at issue, they are set

forth herein in their entirety. The temporary order as to ES states:

Now on this 13th day of February, 1989, comes Michael W. Prenger, Juvenile Officer for the County of Cole, State of Missouri, and states to the Court that [ES] now comes within the purview of § 211.110(1), RSMo. for abuse, § 210.-110(4), RSMo. for neglect and § 211.-031(2)(d), RSMo. in that the behavior or associations of the child are otherwise injurious to her welfare and to the welfare of others and it would now be in her best interest to be placed in the temporary custody of the Division of Family Services, pending completion of the investigation, for placement at St. Mary's Health Center, Highway 50 and Missouri Boulevard, Jefferson City, Missouri and upon her release from St. Mary's Health Center she be placed in an approved foster home.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by this Court that [ES] be placed in the temporary custody of the Division of Family Services, pending completion of the investigation, for placement at St. Mary's Health Center, Highway 50 and Missouri Boulevard, Jefferson City, Missouri and upon her release from St. Mary's Health Center she be placed in an approved foster home, pending further Order of this Court.

The initial, temporary order as to MDS states:

Now on this 27th day of March, 1989, comes Michael W. Prenger, Juvenile Officer for the County of Cole, State of Missouri, and states to the Court that [MDS] now comes within the purview of § 210.-110(1), RSMo. for abuse, § 211.031(2)(d), RSMo. in that the behavior or associations of the child are otherwise injurious to her welfare or to the welfare of others, § 211.031(1)(b), RSMo. in that the child is otherwise without proper care, custody or support, § 210.110(4), RSMo. for neglect and § 211.031(1)(a), RSMo. in that the parents or other persons legally responsible for the care and support of the child neglect or refuse to provide proper support, education which is re-

quired by law, medical, surgical or other care necessary for her well-being and that on March 15, 1989 [MDS] was placed in the custody of the Division of Family Services for placement in an approved foster home.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by this Court that [MDS] be, and she hereby is placed in the custody of the Division of Family Services for placement in an approved foster home, pending further Order of this Court.

The initial, temporary order as to BDS states:

Now on this 18th day of September, 1989, comes Michael W. Prenger, Juvenile Officer for the County of Cole, State of Missouri, and states to the Court that [BDS] now comes within the purview of Section 210.110(1) RSMo, for abuse, Section 211.031(1)(b), RSMo. in that the child is otherwise without proper care, custody or support and Section 210.110(4), RSMo. for neglect and it would now be in [BDS]'s best interest to be placed in the custody of the Division of Family Services for placement in an approved foster home.

IT IS THEREFORE ORDERED, ADJUDGED [sic] AND DECREED by this Court that [BDS] be placed in the custody of the Division of Family Services for placement in an approved foster home, pending further Order of this Court.

These initial, temporary orders are the orders from which the trial court claims its jurisdiction attached. The court states in paragraph 21 of its findings of fact following the termination hearing that jurisdiction was first established as to ES on February 13, 1989, as to MDS on March 27, 1989, and as to BDS on September 18, 1989. Respondent informs this court in its statement of facts relating to ES and MDS that the court's initial, temporary orders state that these minor children come within the purview of certain statutes and that it would be in the best interest of the children for temporary custody to be placed with the DFS. We disagree.

The documents titled "Order" begin with a recital of the juvenile officer's allegations. The juvenile officer "states to the court" that the children come within the purview of the enumerated statutes and that it would be in their best interest to be placed in the temporary custody of the DFS. The order portion of the document, however, contains no findings of fact. It does not adopt the juvenile officer's allegations as the court's findings.

Although it is true that the juvenile court did have jurisdiction over these children to remove them from a dangerous situation, in order to continue its jurisdiction, the court is required to make certain findings after conducting a hearing on the petition. Rule 119. On April 20, 1989, the trial court conducted a hearing on the petitions regarding ES and MDS after which the court made a "docket sheet entry." The first paragraph of the entry states the appearances of the parties and their counsel. The second paragraph states, "Minor child to be made a Ward of the Court, remain in the custody of the Division of Family Services for placement in an approved foster home." The third paragraph merely states the reason the hearing was not held within 15 days of the filing of the petition.

Subsequently, on July 27, 1990, the trial court entered identical "Amended Orders" as to all three children, which state as follows:

> Now on this 27th day of July, 1990, comes Michael W. Prenger, Juvenile Officer for the County of Cole, State of Missouri, and states to the Court that the above named child[ren] [are] in the custody of the Division of Family Services for placement in an approved foster home, and that reasonable efforts were made by the Division of Family Services to keep the family together but failed, therefore it would be in [their] best interest to remain in the custody of the Division of Family Services for placement in an approved foster home; and
>
> IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by this Court that the above named child[ren] remain in the custody of the Division of Family

Services for placement in an approved foster home, pending further Order of this Court.

■ In its findings of fact entered subsequent to the termination hearing, the court stated that it had had jurisdiction over the children for one year pursuant to § 211.-031.1(1)(a). Missouri courts have held:

> To assert jurisdiction under § 211.031.-1(1)(a), the juvenile court must find clear and convincing evidence that the child is in need of care and that this need has arisen because the parent has neglected to provide the care necessary for the child's well-being.

*In Interest of J.M.P.*, 669 S.W.2d 298, 299 (Mo.App.1984). As noted above, the juvenile court made no findings in its disposition orders.

Section 211.181 addresses orders for disposition or treatment of children. In pertinent part, that statute states:

> When a child ... is found by the court to come within the applicable provisions of subdivision (1) of subsection 1 of section 211.031, the court *shall so decree and make a finding of fact* upon which it exercises its jurisdiction over the child ... (emphasis added).

Additionally, Rule 119.02 applies to the order of proceedings of a hearing on petition concerning a juvenile. Paragraph Seventh of that rule states:

> when the evidence has been received upon the allegations of the petition the court shall determine whether the allegations of the petition have been established in accordance with the [appropriate] standard of proof.... If the allegations have been established, the court *shall* make a finding upon which it exercises its jurisdiction over the juvenile (emphasis added).

Section 211.183 governs the order of disposition and states:

> 1. In juvenile court proceedings regarding the removal of a child from his home, the order of disposition shall include a determination of whether the division of family services has made reasonable efforts to prevent or eliminate the need for removal of the child and,

after removal, to make it possible for the child to return home. If the first contact with the family occurred during an emergency in which the child could not safely remain at home even with reasonable in-home services, the division shall be deemed to have made reasonable efforts to prevent or eliminate the need for removal.

Respondent argues that ES falls within the last sentence of § 211.183.1. We do not disagree; however, that portion of the statute does not relieve the juvenile court from following the remainder of the requirements of §§ 211.181, 211.183 and Rule 119. Section 211.183.5 states:

Before a child may be removed from the parent ... by order of a juvenile court ... the court shall in its orders:

(1) State whether removal of the child is necessary to protect the child and the reasons therefor;

(2) Describe the services available to the family before removal of the child, including in-home services;

(3) Describe the efforts made to provide those services relevant to the needs of the family before the removal of the child;

(4) State why efforts made to provide family services described did not prevent removal of the child; and

(5) State whether efforts made to prevent removal of the child were reasonable, based upon the needs of the family and child.

This court addressed nearly identical arguments in *In Interest of A.L.W.*, 773 S.W.2d 129 (Mo.App.1989). In that case the mother challenged the order of disposition by which the court attempted to remove the children from her custody because the order failed to articulate the findings required by § 211.183. This court held that a finding that "reasonable efforts have been made to prevent or eliminate the need for removal of the children from their home" is a precondition to any order of disposition that removes a child from the home in a juvenile court proceeding. *Id.* at 132. "[A] juvenile court may not order the removal of a child from the parent unless the evidence allows two species of cognate findings *and such findings are actually entered." Id.* at 133 (emphasis added). The findings must not only be articulated but also explained. *Id.* This court held in *A.L.W.* that because the order of disposition violated the statutory mandate of § 211.183, the order of disposition remained unformulated and was insufficient as a judgment for change of custody. *Id.* at 134.

Respondent argues that the above-cited case is not applicable because the allegations in *A.L.W.* were of neglect and the allegations in the instant action are of abuse. We believe this is a distinction without a difference. The statutes are the same regardless of the nature of the allegations presented by the juvenile officer. We find this court's decision in *A.L.W.* apposite to the instant action.

■ Respondent encourages us to follow *T.S. v. P.S.*, 797 S.W.2d 837 (Mo.App.1990). In that case, however, the issue of the trial court's jurisdiction over the matter was not raised. In *T.S. v. P.S.*, this court determined that the appellant had failed to preserve her points for appeal and failed to file timely notice of appeal to the disposition order. Jurisdiction can be raised at any time, even on this court's own motion. *Kansas City v. Reed*, 546 S.W.2d 727, 731 (Mo.App.1977). Therefore, *T.S. v. P.S.* is inapposite to the instant action.

Respondent alleges that all necessary parties stipulated to the jurisdiction of the court over BDS. Although we agree that there was a stipulation, we believe that such stipulation only served to grant the court initial jurisdiction to temporarily remove BDS from the home until an investigation could be conducted prior to a disposition hearing. We do not agree that such a stipulation relieves the court of its duty to follow the requirements of §§ 211.181, 211.183 and Rule 119.

■ When a judgment has been rendered without jurisdiction or authority, ordinarily it must be reversed regardless of the manner in which the lack of jurisdiction is brought to the attention of the higher

court. *Reed,* 546 S.W.2d at 731. This court must reverse the judgment where the record plainly shows lack of jurisdiction. Additionally, this court may, of its own motion, reverse a judgment or order that was rendered without jurisdiction. *Id.*

■ The power of the juvenile court to terminate parental rights is purely statutory, without which the power would not exist. *In Interest of D.J.B.,* 718 S.W.2d 132, 140 (Mo.App.1986). Termination of parental rights, which forever cuts the cord between parent and child, is an awesome exercise of power and, therefore, strict and literal compliance with the statutory language is demanded. *Id.* The party invoking the statute must carry the full burden of proof. *In Interest of Baby Girl W.,* 728 S.W.2d 545, 547 (Mo.App.1987). In the instant action, the trial court failed to comply with the rules and statutes designed to safeguard custody and termination proceedings. Those rules and statutes reflect the fundamental right at stake and the seriousness of its infringement. This court must insist that the trial court follow those mandates in all instances where children are removed from the custody of their parents.

Because the trial court failed to make the required findings of fact upon which it exercises jurisdiction over these children, the trial court's judgment terminating the parental rights of RS and CS is reversed and remanded for further proceedings consistent with this opinion.

All concur.